IN RE ESTATE OF E. G. MORGAN, Deceased, CLAY COUNTY, Appellant; and ERASTUS G. MORGAN, JR., and AUGUSTUS T. MORGAN, EX'RS ET AL., Appellants, v. JASPER MESSENGER, COUNTY TREASURER, ET AL., Appellee.

**Taxation:** ADJUDICATION. An application and order in probate for
1 the payment of estate taxes, wholly *ex parte,* is not an adjudication of the amount due in a proceeding by the county to collect the tax.

**Assessment of omitted property.** Under Code, section 1374, the
2 entry in the " Omission record " for taxation, of withheld or omitted property by an agent of the county employed to assist in collecting the tax, will not invalidate the same, where it appears the work was done under the supervision of the treasurer and with his approval.

**Mistake:** EQUITABLE RELIEF: EVIDENCE. Where one charged with the
3 duty of paying taxes appears in response to a notice from the treasurer, and after discussion of the legal duty to pay the tax, acquiesces in the assessment made by the treasurer, he cannot have relief from payment of the tax on the ground of mistake. Evidence held insufficient to show mistake.

**Same.** Where a tax payer voluntarily gives in for taxation securities
4 at their face value which may afterwards prove uncollectible, equity will not cancel a check given in payment on the ground of mistake.

*Appeal from Webster District Court.*— HON. J. H. RICHARDS, Judge; and

*Appeal from Clay District Court.*— HON. W. B. QUARTON, Judge.

THURSDAY, OCTOBER 20, 1904.

BY agreement the appeals in the cases above entitled were submitted together, and they may be disposed of in one opinion.— *Affirmed.*

In the year 1893 E. G. Morgan died testate in Webster county, this State, and his will was admitted to probate in that county. His two sons, E. G. Morgan, Jr., a resident of Clay county, this State, and Augustus T. Morgan, a resident of Butte, Mont., were named as executors, and they qualified as such. The major portion of the property belonging to the estate was situated in this State, and in greater part the active management thereof was assumed by E. G. Morgan, Jr., presumably by reason of his residence in this State. The material facts are not the subject of any serious controversy, and in substance they are as follows: In the year 1901 it was discovered by the officers of Clay county, assisted by tax ferrets, so called, that the estate of Morgan had never paid taxes on moneys and credits in the hands of said E. G. Morgan, Jr., executor, situated in said county, and hence subject to taxation therein. ` Accordingly demand, in form as required by law, was made and served upon said executor by the treasurer of said county. The executor appeared at the treasurer's office in response to such demand, and admitted his liability as such executor to pay taxes on property of the character in question in his hands belonging to the estate. Thereupon, and to ascertain the amounts and values of the property to be brought in for assessment, resort was had to his reports as executor, and the figures therein appearing, after some discussion, were accepted and agreed to as a basis for assessment. Accordingly there was entered assessments against the estate, as for moneys and credits, as follows: For the year 1896, $84,000, in round numbers, actual value; for each of the years 1897 to 1900, inclusive, $17,000, in round numbers, actual value. Following this, and at the January term, 1901, of the district court of Webster county, an application in probate was made, signed by E. G. Morgan, Jr., as executor, reciting that no taxes had ever been paid on moneys and credits belonging to said estate; that an assessment and levy as of back and unpaid taxes had now been made by the treasurer

of Clay county, the amount of such taxes as determined upon being the sum of $4,165.64, and being for the years 1896 to 1900, inclusive. An order was prayed authorizing the payment by the executors of the sum named in satisfaction of such taxes. An order was granted and entered of record as prayed. Thereafter said E. G. Morgan, Jr., executor, executed and delivered to the county treasurer of Clay county his two bank checks, ordinary in form and drawn on a local bank, one for $2,000, and one for $2,165.64, the latter being dated ahead — that is, April 1, 1901; and thereupon he received from the treasurer a receipt in full for all taxes due from said estate on account of moneys and credits as for the years in question. The check for $2,000 was paid by the bank on presentation. Payment of the other check was stopped by Morgan, and the same remains in the hands of the county treasurer dishonored.

The action in equity above entitled was commenced in April, 1901, by the executors named, with whom were joined all the devisees under the will of Morgan, Sr. In the petition it is alleged that a mistake was made in the adjustment and determination of the amount of taxes due from said estate, and praying that the settlement made by E. G. Morgan, Jr., be set aside, and that the check given by him for $2,165.64 be canceled. The specific allegation is that in the amount of the assessment of moneys and credits there was by oversight and mistake included the sum of $31,500, which in point of fact had been actually paid by the executors to devisees under the will as early as the year 1894; also, that for all the years, including 1896, the estate was entitled to a reduction in the assessments as made, for that by mistake and oversight there was included in the amount of such assessments sundry worthless notes and accounts, as well as various sums of money previously disbursed in making payments to devisees, and for taxes, expenses, etc. And plaintiffs say that the assessments as made were without the knowledge or consent of the said A. T. Morgan, co-executor;

that to permit the same to stand, and said check to be collected, would operate as a fraud upon all the plaintiffs other than said E. G. Morgan, Jr., inasmuch as thereby they would. be unjustly mulcted for taxes not due from them in truth, or from said estate, and in respect of which, and the damage resulting therefrom, they would have no remedy over against said E. G. Morgan, Jr. In an amendment to the petition filed during the trial, it was asserted that in fact no assessment was ever made against the property of said estate in the manner provided by law; that the alleged assessment referred to in the original petition was a pretended one only in that it was not made. by the county treasurer as the law directs, but was attempted to be made by so-called tax ferrets, and who were merely agents of the county, employed by the board of supervisors under the provisions of Acts 28th General Assembly, page 33, chapter 50.

Pending the action in equity, and in November, 1901, the executors and devisees under the will appeared in the Webster district court and filed an applicaton setting forth the former application by E. G. Morgan, Jr. and the order made on such application; alleging that in said former application an error was made as to the amount of taxes due, and that in fact the amount due was the sum of about $2,000 only. The equity action pending in Clay county was then referred to, and it was prayed that the former order be set aside, to the end that the liability of the estate might be determined on the merits thereof in such equity action. No notice was given of the application thus made, but Clay county appeared on its own motion and filed an answer and objections in resistance. Upon hearing, an order was made setting aside the first order made. From such order Clay county has appealed, and such is the matter involved in the case first above entitled.

In the equity action, the defendants appeared and answered. The alleged mistake was denied, and other defenses were pleaded, which we need not notice in view of the con-

clusion reached in this opinion. Such action was tried in November, 1902, resulting in a decree in favor of defendants, and therefrom plaintiffs appeal.

*Wright & Nugent,* for executors, devisees, etc.

*Cory & Bemis,* for Clay county, and Messenger, treasurer.

BISHOP, J.— I.   We may give consideration first to the appeal from the order in probate made by the Webster district court.   It is to be observed that the initial application was wholly *ex parte,* and the same and the order made thereon had reference solely to taxes which had accrued subsequent to the death of the testator and while settlement of the estate was in progress.   No appearance had been made on behalf of Clay county in the probate proceedings by way of a claim filed or otherwise.   This being the situation, we think the application amounted to nothing more than a statement of conditions then existing, as understood by the executor making such application, and asking authority to proceed.   In no sense could such proceeding be construed as an adjudication respecting the subject-matter of the amount of taxes due, and therefore binding upon either the executors or the county.   By force only of such initial order it must be manifest that the former could not be required to make payment to the county, especially of an amount in excess of its due; nor, because of such order, could the latter in attempting to force collection be compelled to accept less than was actually its due.   It follows that the subsequent order from which the appeal is taken involved no error.

1. ADJUDICATION.

II.   Coming now to the appeal in the equity case, we may begin by disposing of the contention made by appellants to the effect that no legal assessment was made.   Conceding that appellants are in position to insist upon the point, we think it is wholly without merit.

2. ASSESSMENT OF OMITTED PROPERTY.

Section 1374 of the Code makes it the duty of the county treasurer to proceed to collect taxes on withheld or omitted property when apprised thereof. In terms the section does not require that he shall list or assess the property in a prescribed formal way before proceeding to collect. The determination by him that property has been omitted, and his ascertainment of the amount of taxes due on account thereof, is taken to be a substitute for the assessment required by the general provisions of the statute relating to that subject. *Galusha v. Wendt,* 114 Iowa, 597; *Beresheim v. Arnd,* 117 Iowa, 83. Chapter 50, page 33, Acts 28th General Assembly, was enacted with the evident expectation that the work of making discovery of omitted property would be facilitated by the employment of agents for that purpose. Among other things the act requires that before listing any property discovered a notice shall be given fixing a time and place at which objections to the proposed assessment may be made. The Code section and the later legislative act are to be considered together, and therefrom no more can be said than that the treasurer, when satisfied that property has been omitted, shall make the fact to appear properly of record in his office as a basis upon which further proceedings may be had. What was done in the instant case makes it unnecessary to consider what might be the effect of a failure to make such record.

It appears that when E. G. Morgan, Jr. appeared in response to a notice and demand, admitted to have been regularly made by the treasurer, that the subject-matter of the character and value of the property subject to taxation was taken up between said executor and the tax agents in the employ of the county, and a basis for assessment arrived at. We think it sufficiently appears that all this was called to the attention of the treasurer and had his approval. Thereupon there was entered up in what was known as the " Omission Record," an official record book belonging to the treasurer's office, and in which was entered up all matters

having relation to assessments on withheld or omitted property, the name of the estate, the kind and value of the property owned in each year, the rate of taxation for each year, and the amount of taxes due.   Now, that the clerical work of writing the entries in the record was done by one of the tax ferrets, or agents, conceding that such was the course of proceeding, is immaterial, inasmuch as it clearly appears that what was done was with the approval and under the supervision of the treasurer.   The assessment thereby became his act.   It is not necessary that such officer shall by his own hand do all the work, clerical and otherwise, incident to his office.   In *Snell v. Ft. Dodge,* 45 Iowa, 565, it was asserted that an assessment was invalid because the assessor had employed others to fix valuations and make up the assessment lists.   But, it having been made to appear that the work done was submitted to and approved by the assessor, the contention was declared to be without merit.   The principle involved applies with equal force to the fact conditions presented by the instant case.

Proceeding to the issue of mistake, it appears conclusively enough that of the moneys and credits included in the amount of the assessment the sum of $31,500 had been in truth disbursed by the executors during the year 1894, as claimed by them.   The fact situation came about in this way:  Such disbursement had been made without an order of court being obtained authorizing the same, and the executors had been advised to and did omit any reference thereto in their 1896 report, the intention, as asserted, being to subsequently procure an order having the effect to cover and validate the distributive payments thus made.   Matters stood in this way when the executor was called upon to take up the subject of back taxes as hereinbefore referred to.   Now, a careful reading of the record makes it appear conclusively that the inclusion in the assessment of the amounts previously disbursed to the devisees under the will did not result from any

3. MISTAKE:
equitable
relief;
evidence.

forgetfulness, or from any mistake of fact on the part of the executor, E. G. Morgan, Jr. According to his own testimony given upon the trial the fact of such disbursement having been made was discussed between himself and the county agents and authorities before the assessment was made, the discussion taking the form of a contention as to whether or not the amount of the disbursements should of right be included in the assessment; those representing the county affirming the right, and the executor denying. The dispute ended in the executor acquiescing in an assessment in the amount as made, being inclusive of the disbursements. This being the state of the record, manifestly the plaintiffs must fail in this action. Conceding the power of a court of equity to grant relief as against mistakes of fact, including the matter of voluntary payments made, yet here there was no mistake of fact, and there is no room for the application of the doctrine invoked. If mistake there was, it was one respecting the status of the parties from the standpoint of legal right or duty. We need not enter upon a discussion of the rules which obtain in cases of that character. Granting then that an assessment as for the year 1896 could not have been enforced as against the amount of moneys and credits so previously disbursed, and that the county ought not in good conscience to insist upon payment, we have no basis in the record before us to grant the relief prayed.

As to the assessments for the years subsequent to the year 1896, as affected by payments to devisees, it is sufficient to say that here also the record fails to show that the same were paid under mistake of fact. In the view we have taken of the case, we need not discuss the merits of the claim made by the plaintiffs in respect of the payment of taxes, expenses, etc. As to the claim that in making up the assessment, the fact was overlooked that worthless notes, securities, etc., were being included therein, we have to say, conceding such to be a proper matter for determination in the form presented, that the relief de-

4. SAME.

manded could not be granted.   The subject had relation to values only, and if a taxpayer voluntarily gives in for taxation securities at their face value concerning which doubts may exist as to their collectibility, or which may afterwards prove to be uncollectible, while he might have relief at the hands of an equalization board, still we know of no reason for allowing resistance to be made to a tax once assessed, or, if paid, for allowing the amount to be recovered back.

As defendants do not allege any grounds, or make any demand, for affirmative relief we do not undertake to determine their rights under the dishonored check in the hands of the treasurer, or to recover the amount thereof in some other form of action, should they be advised to prosecute such action.   We conclude that the trial court was right in dismissing the equity action at the costs of plaintiffs.

Upon each appeal the judgment is *affirmed.*