Cedar Rapids & Iowa City Railway & Light Company, Appellee, v. Chicago, Rock Island & Pacific Railway Company, Appellee, and Illinois Central Railway Company, Appellant.

**Contracts:** PARTIES: WHO MAY ENFORCE. A third party may by acceptance of the terms of a contract, though not in fact a party to the original instrument, acquire such an interest therein as will entitle him to an enforcement of the agreement; as

where it was agreed between two railroad companies that if an electric light plant would grade and furnish any additional right of way, a spur track would be constructed to its plant for the purpose of switching cars of coal, and it accepted and performed the terms, the light company acquired an enforcible interest in the contract.

**Same:** NOTICE OF TERMINATION. It is also held that the railroad company constructing the spur track could not terminate the contract without giving the light company the notice provided therein, so that it could make other arrangements for receiving cars of coal consigned to it over the road of the other railroad company.

**Same:** ABROGATION OF CONTRACT. It is also held that the rights of the light company in the contract between the railroad companies were not modified or abrogated by a subsequent agreement between the light company and the railroad company constructing the spur track, that such track should remain the personal property of the railroad company and could be maintained and operated as long as the light plant was operated.

**Railroads:** CONTRACTS: DISCRIMINATION IN TRANSPORTATION PRIVILEGES. A contract between railway companies for the construction and use of a spur track, for the purpose of switching cars to a customer at a specified charge, is not in violation of the Interstate Commerce Law, unless contemplating some discrimination against other customers entitled to the same privileges.

**Same:** BREACH OF CONTRACT: INJUNCTION. The contract in this case, which was between two railroad companies, provided in substance that if a lighting company, not a party to the contract, would grade the right of way to its plant one of the railway companies would iron the same and the other company should have the right to switch its cars of coal over the same at a stipulated charge, all of which was done. *Held,* that the lighting company had such an interest in the contract that it could restrain the constructing railway company from interfering with the right of the other company to switch its cars over the track to the plant of the lighting company, the remedy at law for breach of the agreement being inadequate.
Weaver, J., dissenting.

*Appeal from Cedar Rapids Superior Court.*—HON. JAMES H. ROTHROCK, Judge.

TUESDAY, JANUARY 18, 1910.

AN action in equity to enjoin the defendant the Illinois Central Railway Company from interfering with or preventing the defendant the Chicago, Rock Island & Pacific Railway Company from delivering cars of coal over the tracks of said Illinois Central Company to the plaintiff's electric light and power plant. There was a decree for the plaintiff, and the defendant the Illinois Central Railway Company appeals.—*Affirmed.*

*Kenyon, Kelleher & O'Connor (J. M. Dickinson,* of counsel), for appellant.

*John A. Reed,* for appellee Cedar Rapids & Iowa City Railway & Light Co.

*Carroll Wright,* for appellee Chicago, Rock Island & Pacific Railway Co.

McCLAIN, J.—In 1893 the Cedar Rapids Electric Light & Power Company was engaged in the business of furnishing light and power and steam heat for the city of Cedar Rapids, and the Illinois Central Railway Company and the Burlington, Cedar Rapids & Northern Railway Company were operating lines of railroad to Cedar Rapids, over which, as well as over other lines of railroad, cars of coal were transported for delivery to said electric light company. The power plant of the electric light company was situated near the main track of the Illinois Central Company, which owned in the neighborhood of said plant a considerable tract of land used for switches and other railroad purposes. The principal line and the switchyard of the Burlington Company were situated at some distance from said power plant. The Illinois Central Company at this time maintained no switch engine and crew at Cedar Rapids, and did the switching necessary in the operation of its road by its regular road engines and crews. Under

.these circumstances, and as a result of some prior corres-
pondence between C. J. Ives, the president of the Burling-
ton Road, and also the president of the electric light com-
pany, and J. T. Harrahan, second vice president of the
Illinois Central Company, the latter made to the former
as president and general manager of the Burlington Road
the following proposition: .

If the electric light works will do the grading and
furnish any right of way necessary, in addition to the
ground now owned by this company, for a spur track on
or near the line marked track 'A' on the blueprint herewith,
this company will build the track at its expense on condi-
tion that the Burlington, Cedar Rapids & Northern Rail-
road Company will pay to the Illinois Central Railroad
Company forty cents for each car that shall be brought
from the B., C. R. & N. R. R. Co., and placed on the
said Illinois Central track 'A' by B., C. R. & N. engines
as rent for the use of track between the tracks of the B.,
C. R. & N. and the said track 'A,' and also the use of the
said track 'A,' the payment for such use of tracks to be
made on or before the fifteenth of each month for the cars
so placed in the preceding month.   In case this company
should desire to remove the track, it reserves the right to
do so, on giving thirty days' notice in writing to the elec-
tric light works and your company of its intention to do
so.   If your company is satisfied with the terms, please
note your acceptance hereon, and return one of the dupli-
cates, retaining the other for your file.

Mr. Ives indorsed on this proposition his acceptance
of the terms and conditions thereof for the Burlington
Road, and a spur track connecting the track of the Illinois
Central Railway Company with the power house of the
electric light company was constructed.   For about fourteen
years the terms of this agreement were acted upon and
complied with by the Illinois Central Company, the Bur-
lington Company, and the defendant Chicago, Rock Island
& Pacific Railway Company, succeeding to its rights and
franchises, and the electric light company, and this plain-

tiff succeeding to the property rights and franchises of said electric light company. In accordance with this arrangement cars of coal destined for the power plant of the electric light company, or the plaintiff as its successor in business, arriving at Cedar Rapids over any line of railroad, were switched to the power plant by the switch engines and crews of the Burlington Company or the Rock Island Company as its successor, and payment at the rate of forty cents per car was made by the electric light company or the plaintiff to the Illinois Central Company.

In 1907 the Illinois Central Company, through its general manager, notified the Rock Island Company that, inasmuch as the Illinois Central Company was maintaining a switching organization at Cedar Rapids, that company wished to terminate the arrangement above referred to, and advised the Rock Island Company that, after September 5th, the Illinois Central Company would cease to abide by the terms of the agreement made with the Burlington Company in 1893, and would thereafter handle the switching, placing all cars at the plant of the plaintiff. After negotiations, which were extended beyond the time fixed in the communication last above referred to, the Illinois Central Company locked its switches against the use of its tracks by the Rock Island Company to transfer cars to the power plant, and the Rock Island Company refused to deliver cars destined for the power plant to the Illinois Central Company for switching, and after some proceedings before the State Board of Railroad Commissioners, which need not be specifically referred to, this action was instituted in effect to compel the Illinois Central Company to allow the use of its tracks by the Rock Island Company in switching cars to plaintiff's power house, as it had previously done under the arrangement made in 1893. After hearing the evidence, the court entered a decree against the Illinois Central Company, enjoining it from in any manner interfering with the use by the Rock Island

Company of such portions of the main line and spur tracks of the Illinois Central Company as may be necessary in the switching of cars of coal from the tracks of the Rock Island Company to and upon the spur track of the Illinois Central Company which serves the power house of plaintiff, and from tearing up or removing, or causing to be torn up and removed, its spur track which serves the power house of the plaintiff without giving the plaintiff thirty days' notice of its intention to do so.

The appellant complains of this decree because it in effect enforces at the suit of plaintiff contract obligations between the Illinois Central Road and the Rock Island Road arising under a contract or arrangement to which neither plaintiff nor its predecessor in interest was a party. Without entering into a discussion of the authorities cited for appellant in support of the proposition that a third party for whose incidental benefit or advantage a contract is made between contracting parties negotiating in their own interests can not have relief for breach of such contract or arrangement, it is sufficient to say that, while the electric light company was not formally a party to the negotiations in 1893, its acceptance of and compliance with the terms of the proposed arrangement were essential before such arrangement could go into effect, and we think it clear that, when the electric light company accepted the terms of the arrangement by grading and furnishing right of way for the spur track, it became a party to the agreement or arrangement. That the electric light company was recognized by the other two parties to this arrangement as acquiring rights under it should it proceed in accordance with the terms of its provisions is made apparent by the stipulation that, if the Illinois Central Company desired to remove this spur track, it could do so only by giving thirty days' notice in writing to the electric light company.

It is contended, however, for appellant that the ar-

1. CONTRACTS: parties: who may enforce.

rangement formally entered into was between the Illinois Central Company and the Burlington Company, and that,

2: SAME: notice of termination.

as no provision for its termination was máde, there was an implied right to terminate it at least on the giving of reasonable notice. But we can·not concede that after the electric light company had procured this spur track at its own expense for grading and right of way, which track, as it appears from the record, furnishes the only present available means by which cars of coal may be delivered at its plant, the Illinois Central Company can deprive it of the benefit of the use of such track for receiving cars consigned to it over the Rock Island Road by the cancellation of the agreement with the Rock Island Company, .without taking into consideration the rights of the plaintiff. It may well be true that an agreement like this, so far as it should concern only the two railroads, containing no specification as to terms of continuance or method of cancellation, might be canceled on reasonable notice. But this arrangement, so far as it affected the plaintiff, did contain specific terms in regard to its cancellation. The Illinois Central Company could on thirty days' notice to plaintiff remove the spur track which it had constructed to plaintiff's power plant on a grade and right of way provided by the plaintiff's predecessor·at its own expense, and we think the Illinois Central Company had no right to terminate the arrangement, so far as it affected the plaintiff company, without giving such notice and removing its spur track, so that the plaintiff might make some other arrangement for receiving at its power plant cars of coal consigned to it. In other words, so long as the Illinois Central Company retains the control of the spur track over which cars of coal are received by the plaintiff company at its power plant, it can not prevent the use of that spur track in the method contemplated by the arrangement under which it was constructed at the expense of plaintiff's predecessor.

In 1903 the Illinois Central Company and the electric light company entered into a contract in connection with the sale of a lot from the former to the latter for the extension of the power plant, involving, as we understand it, some slight change in the location of the spur track. This contract relied upon by appellant as a modification of the arrangement of 1893, and as finally determining the respective rights of the two companies, contained the following recitals and stipulations:

3. SAME: abrogation of contract.

Whereas, the party of the first part (the Illinois Central Company) is the owner of certain spur or side track which extends to and upon the premises of the party of the second part (the electric light company) at Cedar Rapids, Iowa, as shown by the black and white line on the plat hereto attached, which said track is used for the purpose of delivering coal and supplies to the electric light plant of the party of the second part, it is now mutually agreed as follows: (1) That the said spur or side track shall be and remain the property of the party of the first part, that it shall remain personalty and shall not become a part of the realty and that the party of the first part shall have the right at any time in its discretion to abandon the use of the said track and to take up and remove the same provided that a written notice of its intention to remove the said track shall be given to the party of the second part thirty days before the removal of the same shall be commenced. (2) That the party of the first part shall have the right to maintain and operate the said spur or side track as now located upon the premises of the party of the second part, so long as the party of the second part shall operate its said electric light plant. (3) Until thirty days after notice has been given as provided in section 1, the party of the first part will permit the said spur or side track to be and remain as now, upon the premises of the party of the second part, and to be and remain connected as now with the track of the party of the first part, and to be used for the purpose of delivering coal and supplies to the electric light plant of the party of the second part, over the said connecting track of the party of the first. (4) This agreement

shall be binding on the successors and assigns of each of the parties hereto.

This arrangement, however, expressly recognizes the ownership of the spur track by the Illinois Central Company, and the right of the electric light company to have such track remain in use for its benefit until the right shall be terminated by thirty days' notice. So far as this agreement purports to confer upon the Illinois Central Company the perpetual right, while the electric light company and its successors continue to operate its plant, to maintain the spur track, it is not involved in the present litigation; but it is plain that no right existing in favor of the electric light company under the arrangement of 1893 is abrogated, either by express terms, or by implication. It seems rather that the contract expressly recognizes and contemplates the continuance of whatever rights the electric light company had previously acquired, the rights which it had in the meantime enjoyed, and which it continued to enjoy without question until the Illinois Central Company attempted to appropriate to itself the sole right, as against the provisions of the arrangement of 1893, to switch Rock Island cars to the power plant, such right, involving, as appears by the evidence, a charge of $2 per car for switching service. Whether the Rock Island Company had the right to switch cars from other roads over the Illinois Central tracks to this spur track, and make a switching charge therefor, is not a subject of controversy in this case. The decree appealed from simply prohibits the Illinois Central Company from preventing the switching of cars by the Rock Island Company, arriving at Cedar Rapids over its own line, to the power plant on the payment of forty cents per car to the Illinois Central Company for the use of its tracks.

Much is said in argument as to the present controversy being merely one in effect between the Rock Island Company and the Illinois Central Company; and it is

contended that the effect of the decree was to determine,
only that the Rock Island Company rather than the Illi-
nois Central Company should derive a profit from the use
of the tracks of the latter in transferring cars to the power
plant.   As we look at it, this is not the ruling question in-
volved in the controversy.   Under the arrangement of 1893,
plaintiff had the right to receive cars from the Rock Island
Company with no other charge than the payment of forty
cents per car, while, under the assertion of right by the
Illinois Central Company, in practical abrogation of that
arrangement, the plaintiff would be compelled to pay to the
Illinois Central Company $2 per car for switching.   The
plaintiff has a substantial interest, therefore, in maintain-
ing the arrangement of 1893, and insisting that its pro-
visions shall be carried out by the Illinois Central Com-
pany so long as the spur track is maintained in connection
with the Illinois Central line at the power plant.   If the
Illinois Central Company shall elect to remove this spur
track and relinquish the privilege which it now has by
virtue of the maintenance of that track, then it will be
open to the parties to make some other arrangement in re-
gard to the delivery of cars of coal to the plant.   But we
think that, so long as the Illinois Central Company enjoys
the benefits of that arrangement, it can not relieve itself
from its burdens.

The construction of the arrangement of 1893 above in-
dicated is objected to by appellant on the theory that it im-
plies a perpetual license in the nature of an easement
to the Rock Island Company to use the track of the Illi-
nois Central Company, and cases are cited to the effect
that such a privilege as is conferred by that arrangement
is a mere license terminable at pleasure.   But we think
no such question is involved.   The decree below does not
determine the rights of the Rock Island Company with
reference to the use of the tracks of the Illinois Central
Company, but only determines that, so long as the Illinois

Central company retains the spur track at plaintiff's power plant, the plaintiff has the right to receive cars of coal brought to Cedar Rapids over the Rock Island line without being subjected to a switching charge by the Illinois Central Company.

Something is said in argument as to the validity of the arrangement of 1893, involving, as contended, a discrimination in favor of the plaintiff company which is now

4. Railroads: contracts: discrimination in transportation privileges.

invalid under the interstate commerce laws enacted by Congress, but we find no such question in the case. Whether the terms given to the plaintiff under that arrangement are in fact discriminatory as compared with the terms given to other industries enjoying the privilege of spur tracks does not appear. It is certainly competent, notwithstanding the interstate commerce statutes, for a railroad company to enter into an agreement as to the terms and conditions on which a spur track for a private customer shall be installed, and it can not be that the terms and conditions of such arrangement are invalid under the interstate commerce statutes, unless they do in fact involve or contemplate some discrimination against other persons seeking or enjoying like privileges.

Finally, we have to notice the contention of appellant that the allegations of the petition, and the evidence presented in the record do not make out a case entitling

5. Same: breach of contract: injunction.

plaintiff to equitable relief. We find no merit in this contention. The plaintiff, as successor to the electric light company, is entitled to the use and enjoyment of a spur track upon its property to the construction of which it contributed, and the use of which it is entitled to enjoy by the arrangement of 1893. The threatened action of the Illinois Central Company will materially interfere with the beneficial use of that spur track. The case is not one simply of breach of contract, but involves a threatened interference with

property rights for which the law could give no adequate compensation in damages.  If the plaintiff is deprived of the right to receive cars of coal consigned to it over the Rock Island road, it will to some extent be prevented from enjoying the competition in prices between shippers who must consign their coal over that road and shippers who can send their cars over the Illinois Central road.   The measure of damages can not be determined by the amount of the switching charge, for there will be no switching charge on cars consigned over the latter road.   Plaintiff will undoubtedly be able in some way to compel the delivery at its power plant of cars of coal destined to that plant over any line of road, but it will be subjected to a limitation of its facilities for receiving cars over the Rock Island road which the arrangement of 1893 was intended to obviate.   We think the case is clearly one for equitable relief, and that the lower court did not exceed its equitable jurisdiction in the relief granted.   The decree is therefore *affirmed*.

WEAVER, J. (dissenting).—I do not think the light company was a party to the original contract or obtained any enforceable right against the Illinois Central Company thereunder.

Assuming that this objection is unfounded and that the light company could under the original contract insist upon its continuance indefinitely until the Illinois Central Company should give proper notice of its withdrawal, that right was waived and abrogated by the later contract. By that agreement the latter company obtained the right to have its connection with the light plant maintained permanently, but assumed no obligation to continue indefinitely the privilege of the Rock Island Company to use its track in serving the light plant.   That privilege was a mere license, which could be lawfully withdrawn at any time on giving reasonable notice.   Such notice was given,

and in my judgment the decree appealed from should be reversed.