PERRY SAVINGS BANK, Appellee, v. WALTER FITZGERALD, Appellant.

Negotiable instruments: HOLDER IN DUE COURSE: DEFENSE OF USURY: STATUTES. The provisions of the Code of 1897 relative to usury, the penalty for usury and recovery by a good faith purchaser on a usurious instrument, were not repealed by the Negotiable Instruments Act, either directly or by implication; but when the provisions of the latter act are construed in connection with the original statutes, as must be done so as to give effect to all provisions, if possible, the defense of usury is still available as against a holder in due course, the same as prior to the passage of the Negotiable Instruments Act.

Same: BONA FIDE PURCHASER: EVIDENCE: SUBMISSION OF ISSUE. The uncontradicted evidence of the purchaser of a note that he took the same without notice that it had its inception in fraud may not justify the direction of a verdict in his favor; but there may be facts and circumstances in connection with the transaction which, considered together with the direct evidence on the subject, require a submission of the issue to the jury. In the instant case the question of whether the plaintiff was an innocent holder was for the jury.

Same: NEGOTIABILITY. The negotiability of an instrument is not affected by a provision which waives the provisions of any law intended for the benefit of the maker.

Exclusion of evidence: WAIVER OF ERROR. Where the court excluded evidence at the time it was first offered, but subsequently during the trial changed his ruling and announced that it would be received, and the party then offered part of his evidence on the subject, though unable at the time to produce it all because of the absence of witnesses, but he asked no postponement until he could procure their attendance, he was not in position to urge error in the original ruling.

*Appeal from Dallas District Court.*—HON. LORIN N. HAYS, Judge.

FRIDAY, NOVEMBER 27, 1914.

ACTION upon a promissory note. Trial to a jury and a directed verdict against defendant for $958.86. From the judgment against him, he appeals.—*Reversed.*

*R. & F. G. Ryan* and *Harry Wifvat,* for appellant.

*H. S. Dugan* and *White & Clark,* for appellee.

PRESTON, J.—The note was, by its terms, payable to the order of H. I. Steltzer, and was by him indorsed to plaintiff, without recourse. By way of defense, appellant claimed that the appellee was not a bona fide purchaser of the note sued upon; that the note was not negotiable; that the signature of appellant to the note was obtained by fraud and misrepresentation; that the note upon which suit was brought was for usurious interest and pretended commissions exacted from appellant for extensions and renewals to a certain note in the sum of $159.11; and that this was the only consideration. For reply, plaintiff says that it became the holder of the note before it was due and without any notice of any defect or infirmity in the instrument, or title of said Steltzer, and that plaintiff purchased the note for a valuable consideration, in due course, and in good faith, and without notice.

There are two principal questions involved. One is, when a note is composed of usurious interest incorporated therein, whether or not a holder in due course takes such note free from any forfeiture on account of such usurious interest, and whether the plaintiff bank is a holder in due course of the note. There are several other questions which entered into the trial of the case with respect to the rulings on admissibility of the evidence, and whether, under the evidence, the court was justified in sustaining the motion for a directed verdict.

I. It is the claim of defendant that the note sued upon is made up of usury, or largely so. Defendant admits, as we

understand the record, that $159.11 of the $937 note is owing by him, but he says that no more is due.

It is contended for appellee, and the trial court so held, that usury cannot be pleaded against a holder in due course; that plaintiff is a holder in due course and takes free from such defense. The contention of appellee is

1. NEGOTIABLE INSTRUMENTS: holder in due course: defense of usury: statutes.

that by the passage of the Negotiable Instruments Act, and particularly that portion now appearing as section 3060-a57 of Code Supp. 1907, the law as to usury has been modified so that a purchaser in due course and without notice now takes a usurious note free from any taint of usury; that the law in this state now is that there is only one defense available against a holder in due course, and that is that the instrument was a forgery. The section of Code Supp. just referred to is as follows:

The holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.

It is the latter part of the section upon which plaintiff relies.

On the other hand, appellant argues that to so hold is to say that the section just referred to of the Negotiable Instruments Law is to repeal by implication sections 3038, 3040, 3041, and 3042 of the Code. The first section referred to fixes the rate of interest which may be charged, and the second prohibits a higher rate. Section 3041 provides a penalty for usury, and section 3042 reads in this wise:

Any assignee of a usurious contract, becoming such in good faith in the usual course of business and without notice of such fact, may recover of the usurer the full amount of the consideration paid by him therefor, less any sum that may have been realized on the contract, anything in this chapter contained to the contrary notwithstanding.

The holdings have been that under this section usury may be pleaded against a bona fide holder for value of a negotiable instrument as well as against the payee; that a note in which is included usurious interest is void to the amount of such usurious interest included therein, even though the note be in the hands of a bona fide purchaser. *Bacon v. Lee & Gray,* 4 Iowa, 490; *Campbell v. McHarg,* 9 Iowa, 354; *Smith v. Coopers,* 9 Iowa, 376; *Burrows v. Cook,* 17 Iowa, 436. See, also, *Pond v. Waterloo Agl. Works,* 50 Iowa, 596; *Polk County Savings Bank v. Harding,* 113 Iowa, 511.

Appellee does not claim such was not the rule prior to the enactment of the Negotiable Instruments Law by the 29th General Assembly, chapter 130. The Negotiable Instruments Act does not purport to repeal sections 3041 and 3042 of the Code. These sections are not referred to in the title of the act. See chapter 130, Laws of the 29th General Assembly. Section 197 of that act, now 3060-a, Code Supp., does repeal certain other sections of the Code, specifically giving the number. Nor does section 3060-a57 refer to the two sections of the Code just mentioned.

The negotiable instruments statute is a comprehensive piece of legislation. It goes into detail in dealing with the subjects embraced by it. The scope of it deals with commercial paper, so as to protect innocent purchasers of such against defenses available as between the original parties.

It is familiar doctrine, not requiring the citation of authority, that repeals by implication are not favored; that all statutes upon a subject will be upheld and sustained, if possible, and, when the statutes cover in whole or in part the same matter and are not absolutely irreconcilable, no purpose of repeal being clearly expressed or indicated, it is the duty of the court, if possible, to give effect to both.

Section 3041 of the Code provides a penalty as follows:

If it shall be ascertained in any action brought on any contract that a rate of interest has been contracted for, directly or indirectly, in money or in property, greater than is authorized by this chapter;  .  .  .   and in no case where un-

lawful interest is contracted for shall the plaintiff have judgment for more than the principal sum, whether the unlawful interest be incorporated with the principal or not.

Under the Iowa authorities before cited, the meaning of this statute is that a holder in due course takes a negotiable instrument subject to a forfeiture for usurious interest contracted for, whether the same be included in the principal or not.

Section 3042, heretofore quoted, provides a remedy for an assignee of a usurious contract, becoming such in good faith in the usual course of business and without notice of such fact, and provides that he may recover of the usurer the full amount of the consideration paid him, less any sum that he may have realized on the contract. By the language of the one section the Legislature has provided a penalty that attaches to the usurious contract in any one's hands, and by the second provision, provided for the protection of a holder thereof in due course by giving him a remedy as against his assignor. This works no hardship upon any innocent party, yet there is sufficient to accomplish the evident intention of the Legislature to punish the practice of charging usurious interest.

The first provision of section 3060-a57 before quoted is:

A holder in due course holds the instrument free from any defect of title of prior parties.

Section 3060-a55 provides:

When title defective. The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud.

The only provision of this section which would apply to a usurious contract is that the same was given for an "illegal consideration."

That contracts including usury are not contracts based upon an illegal consideration is the basis of the decision in *Burrows v. Cook*, 17 Iowa, 436, a case which involved usury charged before and after March 8, 1853, the date of the adoption of the existing statute as to usury. In that case the court said:

The position of the defense is that, notwithstanding the contract in its original concoction was in this regard illegal, being verbal, yet that the objection on this account was unavailable to the plaintiffs: First, because they subsequently legalized the same by reducing it to writing, that is to say, by giving their notes, secured by the deed of trust now in controversy, which included the unlawful interest. But, secondly, if such a consequence did not follow, nevertheless illegality of consideration, unlike usury, could not be urged as an objection against the recovery of the notes in the hands of innocent holders who had taken an assignment of the same before due, without notice of the alleged infirmity. The soundness of this position we are not prepared to gainsay—we believe it to be good law. But while the unlawful interest charged between the 20th of January and the 8th of March, 1853, inclusive, is not now available to the plaintiffs as against Lee, Higginson & Co., innocent assignees, the same being simply illegal and not usurious, still the contract to pay the same, being in parol, had not the effect (although the transaction between the parties was a continuous one) to prevent the usury law of the 8th of March, 1853, from taking effect upon the dealings and transactions of the parties after that date, so that whatever usury was charged against the plaintiffs since then is available to them against any and all persons who may attempt to enforce the collection of the same.

The second clause of section 3060-a57 is: "And free from defenses available to prior parties among themselves."

It was the rule in this state prior to the passage of the Negotiable Instruments Act, as shown by the cases already cited, that usury is in the nature of a forfeiture and may be urged against a contract, into whosesoever hands it may pass. In other words, usury was in the nature of a defense which

was not "available to prior parties among themselves" alone, but was available as between the maker of the instrument and of the world. A fair construction of this provision is that a holder in due course was protected against such defenses as were available between prior parties, but took the instrument subject to any defenses that the parties thereto might, under the law as then in force, urge against the instrument in the hands of third parties.

The third provision of section 3060-a57 should be construed in connection with the two provisions just preceding it:

A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.

The section first makes provision, as has been shown, regarding the defect in the title to the instrument and the particular defenses to the instrument a holder in due course would take the instrument free from, and then makes the provision that such holder "may enforce payment of the instrument against all parties liable thereon;" that is, that payment of the instrument might be enforced in the full amount thereof against parties claiming as a defense thereto (1) that the title of the indorser was defective, or (2) as against some defense which was only available between the prior parties thereto.

In the case of *Henry v. State Bank,* 131 Iowa, 97, at page 101, Mr. Justice Deemer says:

The true rule is announced in *Vallett v. Parker,* 6 Wend. (N. Y.) 615, to the effect that a note, even if founded upon an illegal and immoral consideration, is valid in the hands of a good-faith holder, unless there be a positive statute declaring such instruments void. See, also, *Bacon v. Lee,* 4 Iowa, 490.

While the note in that case was nonnegotiable, it would seem from the above-quoted language that at the time of the decision of that case the court considered the rule as to con-

tracts void by statute, to be unchanged, and cited *Bacon v. Lee* to sustain the proposition.

No cases are cited from other states where there is a statute like our 3042. *Crusins v. Siegman*, 81 Misc. Rep. 367, (142 N. Y. Supp. 348), in which the court, after quoting the provisions of the Negotiable Instruments Act, similar to our section 3060-a57, says:

I am very clearly of the opinion that, notwithstanding the provisions of the statute just quoted, a negotiable instrument which is void in its inception, whether it be for usury or for forgery, or for any other reason sufficient to make it void, is also void in the hands of any subsequent holder, except only that owing to the provisions of the banking law (section 74) a bank may in certain cases enforce a usurious instrument, although an individual holder could not do so.

We hold, then, that defendant was not precluded from relying upon the defense of usury.

II. Appellant contends that, regardless of the question as to whether the defense of usury may be made

2. SAME: bona fide purchaser: evidence: submission of issue.

against an innocent holder, the evidence was such as that it was a question for the jury whether defendant was an innocent holder of the note without notice and took it in good faith.

We agree to this view. In view of the holding in the prior paragraph, it is not necessary, perhaps, to discuss at length the question whether in any event the case should have gone to the jury because the claim of defendant in his evidence is that the note was usurious.

Another point will be first noticed briefly. Plaintiff bank is a corporation. Plaintiff placed some of its officers on the stand, but not all of them, to show that the bank had no notice of the defect in the note.

Defendant cites *Bank v. Buck*, 142 Iowa, 1005, to sustain his contention that the plaintiff had not met the burden cast upon it to show the want of notice and good faith. But in that case the question was not raised or decided whether such bur-

den is met by a showing by the only officer who was concerned in the transaction. The evidence in this case is undisputed that John Carmody, the cashier, was the only officer purchasing notes, and that he was the only one who had to do with the purchase of this note. Under such circumstances, the holdings are that the burden is met by his evidence, in the absence of other circumstances. *Des Moines Savings Bank v. Arthur,* 143 Iowa, 556; *Robertson v. Live Stock Co.,* 145 Iowa, 535.

The trial court ruled that plaintiff had the burden of showing that it was an innocent holder without notice. It has been held that the burden was on the bank to show that it did not have notice of the defect and that denial of notice, by one who purchases an instrument, that it had its inception in fraud, even though uncontradicted by other witnesses, is not sufficient to justify the court in directing a verdict in his favor. *McNight v. Parsons,* 136 Iowa, 390.

But it has also been held that, although the uncontradicted evidence of the buyer of fraudulent paper is not sufficient to justify the direction of a verdict, yet the facts and circumstances supporting the denial of notice may be such as would warrant such a direction, but this only in case where the facts and circumstances are such that a reasonable man could not draw therefrom any other conclusion than that contended for. *Arnd v. Aylesworth,* 145 Iowa, 185; *Robertson v. Live Stock Co., supra.*

In the last case it is said that in all these cases the testimony might be insufficient to establish bad faith, and still not affirmatively establish good faith. We shall refer to some of the circumstances shown from which we conclude that it was a question for the jury to say whether plaintiff took the note without notice and in good faith. The evidence on behalf of the defendant was undisputed that the larger part of the consideration of the note was usury. The cashier testified that the bank acquired the note before due and paid the full amount of the note and interest, and that it had no knowledge or notice that defendant claimed that the note was made up of usury.

He also testified that he had known Steltzer, the payee and indorser of the note, for seven or eight years, and knew that he was in the loaning business. He also testified on cross-examination:

Q. Isn't it true, Mr. Carmody, that at the time you purchased this note you were acquainted with the general reputation of Mr. Steltzer that he loaned money at usurious rates of interest? A. No, I don't think so. Q. Had you ever heard that he did? A. I have heard rumors that he did sometimes, yes. These rumors were principally as to loans to, well, for instance, railroad men, where there was a big risk taken.

He also said that the bank had bought other notes from Steltzer. The note was indorsed by Steltzer without recourse, and at the same time the following written agreement was executed and signed by the cashier and Steltzer:

This agreement entered into between Perry Savings Bank, party of the first part, and H. I. Steltzer, party of the second part, witnesseth: In consideration of the Perry Savings Bank purchasing one note, dated December 7, 1912, signed by Walter Fitzgerald, in amount of $937.00, plus interest, due June 1, 1913, second party agrees to indemnify and reimburse the said Perry Savings Bank for any loss suffered in the collection of said note after said collection, and no extension shall be allowed or this agreement is void.

The cashier says they often took such an agreement when the note was indorsed without recourse; that sometimes it was done that way, and sometimes it was done by blank indorsement. From this and other circumstances shown, we are of opinion that the case should have been submitted to the jury.

In *Merrill v. Hole*, 85 Iowa, 66, the court says, in part:

To effect a purchaser with notice of a defense to the note it is not essential that his knowledge be established by direct testimony; it may be shown by circumstances and inference therefrom.

And in *Bank v. Paddick*, 90 Iowa, 63, the court said:

There are many other circumstances in the case which were properly for consideration of the jury. We will mention but one. The witness Nye testified that he had known Warren for four years, and he knew that he was a physician. He must have known what his reputation was. If he did not, he ought to have so testified. He knew that Warren was a traveling doctor, and that this note was executed by persons who resided in a distant part of the state. In short, what he did know of the man, while not amounting to notice of the fraud, was a circumstance which the jury might very properly consider in determining the credibility of his testimony.

III. Another contention of appellant is that the note is a nonnegotiable instrument because it contains a clause which, as appellant claims, is nothing less than a mortgage. Appellant cites cases from Iowa holding that such

3. SAME: negotiability.

a provision is against public policy. But this note conforms to the requirements of section 3060-a57, Code Supp. 1907. Section 3060-a5, par. 3, of the Supplement, provides that the negotiable character of an instrument otherwise negotiable is not affected by a provision which waives the benefit of any law intended for the advantage or protection of the obligor.

IV. Defendant sought to show the general reputation of Steltzer prior to the purchase of this note by plaintiff, as to his being a usurer. The evidence was at first excluded upon objection by plaintiff; but after the evidence

4. EXCLUSION OF EVIDENCE: waiver of error.

was closed, and after a motion to direct a verdict had been made, and before the ruling thereon, the court said that he was of the opinion:

That his ruling on the admission of testimony on yesterday as to the general reputation of this man and place, as to his being a usurer, was too circumscribed and, pending the ruling on this motion, the court will now permit the defendant to inquire further as to the reputation, shall he desire so to do.

In response to this counsel for the defendant said:

The defendant having been by the rulings of the court prevented from introducing evidence on the question of the reputation of Steltzer for charging usury, and having been prevented by the rulings of the court from cross-examining the witnesses for the plaintiff as to their knowledge of the general reputation of Steltzer as to charging usury on loans made, he is now unable, the witnesses not being present, to introduce further evidence as to the general reputation of Steltzer.

Some of the witnesses were recalled and interrogated on this point. Defendant did not ask a postponement until he could procure the other witnesses or attempt to avail himself of the opportunity afforded by the court to introduce such evidence. Under such circumstances, he may not now complain. As bearing on this point, see *Stroup v. Bridger,* 124 Iowa, 401, 406.

V. The form of the questions to the officers of the bank as to notice of defects in the note may have been somewhat objectionable, under the ruling in *Arnd v. Aylesworth,* 145 Iowa, 185, 196. On a retrial, the form of the question may be made to conform to that holding.

For the reasons stated in the opinion, the judgment is reversed and the case remanded.—*Reversed.*

LADD, C. J., and EVANS and WEAVER, JJ., concurring.