FRED W. BUSER, Treasurer of Des Moines County, et al., Appellants, v. THEODORE W. KRIECHBAUM et al., Executors, Appellees.

No. 43739.

DECEMBER 31, 1940.

REHEARING DENIED APRIL 11, 1941.

D. L. Murrow, R. H. Wright, John A. Dailey, and Merrill Gilmore, for appellant.

Charles C. Clark and Ben P. Poor, for appellees.

BLISS, J.—In matters of procedure, the case is complicated. Since certain motions have been submitted with the cause which must be passed upon, somewhat of the history of the case and the proceedings must be set out. J. J. Ransom of Burlington, Iowa, died testate on December 31, 1928, leaving a large estate. It is alleged that approximately a million dollars of the property consisted of stocks, bonds, notes, mortgages, money in banks and other securities commonly listed as moneys and credits under tax statutes. A number of pages of the abstract are used in itemizing and listing the kinds and amounts of these investments. Exhibit E is a list of bank deposits which he had at his death. As noted therein, they were, including

| | |
|---|---:|
| "Cash on hand | $ 1,116.00 |
| American Sav. Bank & Trust Co. of Burlington, Iowa | 34,802.31 |
| Hanover National Bank of New York | 47,346.07 |
| Old Colony Trust Company of Boston | 89,899.69 |
| Marble Sav. Bank of Rutland, Vt. | 5,170.33 |
| First National Bank, of Fair Haven, Vt. | 240.65 |
| Total | $178,575.05" |

In each of the years 1928, 1927, and 1926, he had listed with the assessor, on an assessment roll similar to "Form No. 2" in section 7115, of the 1924 and 1927 Codes, without itemizing, a lump sum statement of moneys and credits in the amount of $17,500.

On July 18, 1930, two members of the Iowa state board of assessment and review had a hearing at Burlington, at which, on subpoena, the executors, Kriechbaum and Smyth, with their attorney, appeared and were interrogated respecting what the records and papers in the estate showed as to amounts and the

times of acquisition of the various moneys and credits of the deceased. While the testimony is not set out in the abstracts, it may be reasonably inferred from the record that the hearing was rather barren of information that was helpful to the tax officers. On the same day, at the direction of the two members of the board, Mr. Buser, the county treasurer, made the entries of the assessments of moneys and credits which Ransom had failed to list for assessment. These entries were made on page 625 of the book (exhibit No. 1) containing the tax list for the year 1929, that is the taxes that would ordinarily have been due in 1930. The entries were as follows:

| "Name | | Moneys and Credits | | Tax Amounts | |
|---|---|---|---|---|---|
| "Ransom, J. J. | Omitted Moneys | 1925 $ 854,766 | $5,128.60 | Int. 6% from April 1, 1926 | |
| Estate | and Credits | | | | |
| James D. | added by Co. | | | | |
| Smythe | Treas. under | 1926 $ 906,051 | $5,436.31 | Int. 6% from April 1, 1927 | |
| Theo W. | Sec. 7155 by | | | | |
| Kriechbaum, | order State | | | | |
| Executors. | Board of As- | 1927 $ 960,415 | $5,762.49 | Int. 6% from April 1, 1928 | |
| | sessment and | | | | |
| | Review, July | | | | |
| | 18, 1930 | 1928 $1,018,040 | $6,108.24 | Int. 6% from April 1, 1929 | |

"April 29, 1932

"The above entry listing an assessment of taxes against the Estate of J. J. Ransom, James D. Smythe and Theo W. Kriechbaum, Executors of the Will of J. J. Ransom, Decd., for each of the years 1926, 1927 and 1928, include Corporation Stocks, Mortgages, Promissory Notes, other Securities and all forms of property subject to taxation under the laws of Iowa, at the rate of six (6) mills on the dollar.

"FRED W. BUSER, Treasurer of Des Moines County, Iowa."

The paragraph after the date of April 29, 1932, was made at that time, and the preceding part of the entry was made on July 18, 1930.

The foregoing listing and assessment of omitted moneys and credits, and the foregoing entries of July 18, 1930, were made pursuant to the following written direction (exhibit No. 6):

"Iowa State Board of Assessment and Review

"Burlington, Iowa,
"July 18, 1930.

"To the County Treasurer, Des Moines County, Iowa:

"You are hereby instructed and directed to enter upon the tax lists and tax books of your county in your office, the following listing and assessment of property to the estate of James J. Ransom, Deceased, late of Des Moines County, Iowa, the following property for the year set opposite each amount.

"1925   $   854,766.00—Moneys and credits, corporation stocks, bonds and mortgages and other securities together with interest thereon at the rate of 6% from April 1, 1926.

"1926   $   906,051.00—Moneys and credits, corporation stocks, bonds and mortgages and other securities together with interest thereon at the rate of 6% from April 1, 1927.

"1927   $   960,415.00—Moneys and credits, corporation stocks mortgages and other like securities together with interest at the rate of 6% from April 1, 1928.

"1928   $1,018,040.00—Corporation stocks, mortgages, bonds and other like securities together with interest thereon at the rate of 6% from April 1, 1929.

"You are apprised that these properties and amounts represent property omitted from assessment and taxation and fraudulently withheld from assessment and taxation.

"This instruction and direction is made under the authority of Chap. 205 Laws of the 43rd General Assembly and other provisions of the law relating to the assessment and taxation of omitted property.

"By authority of the Iowa State Board of Assessment and Review.

"Louis H. Cook, Chairman.
"J. W. Reynolds, Member.
"Iowa State Board of Assessment and Review."

On July 21, 1930, the treasurer wrote a letter to Smyth, executor, embodying the contents of exhibit No. 6, above set out, notifying him to appear at the office of the treasurer within 30 days to make settlement of the claim. On August 18, 1930, the executors, through their attorney, wrote the treasurer acknowledging receipt of his notice and giving 17 reasons why they would not comply with it. On September 4, 1930, the treasurer filed his petition herein praying judgment for the taxes with interest and penalties. On July 27, 1931, he filed an amendment to his petition claiming taxes for each of the years in separate counts, and itemizing the specific moneys and credits omitted from the assessment rolls. On November 13, 1935, a second amendment to the petition was filed listing other omitted property, and alleging that all of the items of property in all of the various exhibits attached to the pleadings were owned by Ransom on the first day of January of the years 1926, 1927 and 1928. A jury was waived and trial was had before Judge Jackson on November 14 and 15, 1935. Exhibit No. 1, that is, the book and page containing the assessments of the omitted property entered on July 18, 1930, with additional entry of April 29, 1932, was offered and reoffered by plaintiff. The defendants objected to it, in substance, as follows: that it is incompetent, immaterial, and irrelevant; that the attempted entry of assessments for the years 1926, 1927, and 1928 of omitted property were not set down in the tax books for those specific years; that the entries constitute no assessment of omitted property as they do not list and specify the property and its particular value and are blanket in form; that there is no showing of any notice or hearing with respect to such assessment; and, that there was in fact no assessment by the state board, or by the county treasurer or any other body or officer. The objection was sustained. The plaintiff offered, by officers from the Hanover National Bank, Old Colony Trust Company, and the Harris Trust & Savings Bank of Chicago, to prove that they had in their control and custody records of their respective institutions pertaining to Ransom's affairs, and that on the first day of January, 1926, 1927 and 1928, he was the owner of the nonassessed property. The offer was refused.

On motion of defendants, the petition was dismissed on November 15, 1935. It is conceded that the judgment was not entered on that day, although on the face of the record book in the clerk's office, it so appeared. Appellant served notice of appeal on February 11, 1936, from the judgment entered as of November 15, 1935. Motion to dismiss the appeal because the notice with service had not been filed in the clerk's office was filed April 7, 1936. This was cause No. 43594 in this court. On April 11, 1936, appellant served and filed a second notice of appeal, and claimed that the judgment appealed from was in fact entered not earlier than December 12, 1935. On June 16, 1936, Donegan, C. J., sustained the motion to dismiss the appeal in cause No. 43594, because the appeal was not timely taken, and the court could not correct the record below. On August 7, 1936, appellant filed abstract on the second appeal (cause No. 43739 in this court). It was the same abstract as filed in the first appeal except that the date of the judgment was given as December 12, 1935. On August 22, 1936, appellees moved to dismiss this appeal and to strike the abstract. On motion of appellant, the submission of the motion to dismiss and strike was deferred by this court until plaintiff's application, filed in the court below on September 19, 1936, to correct the record, could be heard. Hearing was had and evidence taken on December 21, 1936, and judgment rendered on January 22, 1937, that the original judgment had been entered not earlier than November 25, 1935. Plaintiff appealed from this judgment (cause No. 44097 in this court), and on March 15, 1938, (Buser v. Kriechbaum, 224 Iowa 1147, 278 N. W. 330. Rehearing denied June 24, 1938) judgment was rendered reversing the lower court's judgment of January 22, 1937, and adjudging that the original judgment was in fact entered not earlier than December 12, 1935, and directing the lower court to correct its records accordingly. This was done by the lower court on October 28, 1938, but the lower court included in the corrected judgment entry that defendants might file bill of exceptions and motion for new trial by the second day of the November term. The defendants did so, and the appellant then applied to this court for a writ staying any further proceedings in the lower court

until the determination of the present appeal, No. 43739, in this court. On April 4, 1939, this court by Mitchell, Chief Justice, ordered all proceedings stayed in the lower court "until further order of this court."

I. Coming first to the merits of the appeal. Appellees state that "this whole appeal revolves around Exhibit No. 1. It is the exclusion of that exhibit, on Defendants' objection, that laid the foundation of Defendants' Motion to Dismiss, and brought forth the following statement from Plaintiff's attorney, Mr. Gilmore: 'That, as a matter of fact, ends the lawsuit. If there was no assessment, there could be no recovery in this case.' " Appellees further state: "* * * we find a short and very simple matter before this Court for consideration, viz: Were the entries on a 1929 tax list in the Des Moines County Treasurer's office, an assessment and a taxing of monies and credits claimed to have been omitted from the tax books for the years 1926, 1927, and 1928?" The appellant expresses his agreement with the attitude of appellees, and the court will accept this theory of the appeal.

The procedure with respect to the assessment of omitted properties by the county treasurer, during the years in question is found in sections 7155 and 7156 of the Codes of 1924 and 1927. Section 7155 provided:

"Corrections by treasurer. When property subject to taxation is withheld, overlooked, or from any other cause is not listed and assessed, the county treasurer shall, when apprised thereof, at any time within five years from the date at which such assessment should have been made, demand of the person, firm, corporation, or other party by whom the same should have been listed, or to whom it should have been assessed, or of the administrator thereof, the amount the property should have been taxed in each year the same was so withheld or overlooked and not listed and assessed, together with six percent interest thereon from the time the taxes would have become due and payable had such property been listed and assessed."

Section 7156 provided:

"Action by treasurer—apportionment. Upon failure to pay

such sum within thirty days, with all accrued interest, he shall cause an action to be brought in the name of the treasurer for the use of the proper county, to be prosecuted by the county attorney, or such other person as the board of supervisors may appoint, and when such property has been fraudulently withheld from assessment, there shall be added to the sum found to be due a penalty of fifty percent upon the amount, which shall be included in the judgment. The amount thus recovered shall be by the treasurer apportioned ratably as the taxes would have been if they had been paid according to law.''

These sections remained unchanged in the subsequent Codes.

The state board of assessment and review came into being by legislation appearing in chapter 205 of the Laws of the Forty-third General Assembly, effective April 26, 1929. By this act, the board was granted all of the powers and duties of the executive council, and of the auditor of state, relative to the assessment of property for taxation, and was given additional powers and duties.

By chapter 206 of the Laws of the Forty-fourth General Assembly, effective July 4, 1931, the powers, granted to the board by the preceding legislature, were amplified and added to. Among the powers added was that of correcting omissions in assessments of individual taxpayers by adding the same to the tax list, and having a hearing thereon before the board. This additional power appeared as paragraph 9a of section 6943-c27 of the 1935 Code. The paragraph was repealed by section 7 of chapter 188 of the Laws of the Forty-seventh General Assembly.

The appellees urge that, during the trial, the appellant elected to base his right of action and recovery upon an attempted assessment by the board, under the added power, which did not become effective until subsequent to the assessment which was made. This conclusion of appellees is not supported by the record. The proceedings by the county treasurer were throughout based upon the provisions of Code sections 7155 and 7156, under the direction of the state board, as authorized by the provisions of chapter 205 of the Laws of the Forty-third General Assembly, which were in force and effect on July 18, 1930, when the assessment was made.

Appellees also contend that sections 7155 and 7156 were repealed by said chapter 205. We cannot agree with this contention. There is no express repeal of these sections. Section 27 of the chapter states that ''all laws or parts of laws in conflict herewith are hereby repealed.'' Sections 7155 and 7156 are not in conflict with any parts of the chapter. Repeals by implication are not favored. As stated in Perry Savings Bank v. Fitzgerald, 167 Iowa 446, 449, 149 N. W. 497, 498: ''It is familiar doctrine, not requiring the citation of authority, that repeals by implication are not favored; that all statutes upon a subject will be upheld and sustained, if possible, and, when the statutes cover in whole or in part the same matter and are not absolutely irreconcilable, no purpose of repeal being clearly expressed or indicated, it is the duty of the court * * * to give effect to both.''

Appellees also insist that the assessment, if any was made, was not entered in the proper place or book. They contend that the property omitted in each year should have been listed and assessed upon the tax list of the respective years prepared by the county auditor, under section 7145 of the then Codes, instead of upon the tax list for the year 1929. We think that the latter tax list, which was the current one for the taxes payable in 1930, and the one in which the listing and assessment was made, was the proper place and book for the entry to be made. Appellee relies upon Bennett v. Finkbine Lumber Co., 199 Iowa 1085, 198 N. W. 1. We think the facts are distinguishable. In the cited case [Iowa page 1087, N. W. page 2]:

''The county treasurer testified that said notice was prepared by the attorney employed by the board of supervisors, who presented the same to the treasurer for signature. The treasurer testified that he made no investigation of the matter, and did nothing whatever except sign the paper. On cross-examination, he testified that he made no record; that he spread nothing upon his books; and that the only record he had in the office in respect to said matter was the one sheet of typewritten paper, which was the notice and demand, with the registry receipt pinned to it. He also testified that he did not tell the at-

torney to prepare this notice; that the latter brought it to him, together with copy thereof, and he signed it."

In that case, there was little more than a demand. The record was on a loose sheet of paper. The court further said [Iowa page 1093, N. W. page 4]:

"But the making of a mere demand upon the taxpayer is not a listing and assessment of omitted property.

"As we have frequently said, the purpose of this statute is to place omitted property upon the assessment roll. It is to be listed and assessed, as if it had been originally listed and assessed.

"Surely, there must be a record of such listing and assessment as a prerequisite to the right to demand the tax. There is no tax to demand; no tax for which suit may be brought, until this is done. The law certainly contemplates that there shall be a permanent record of all property listed for taxation, and also of the assessment and levy and the amount of tax to be paid thereon. Taxes properly levied, or taxes omitted and subsequently properly levied by the proper officers, are not to be found upon mere typewritten sheets of paper kept somewhere in a treasurer's office.

"A permanent record is required with regard to these matters, so that the taxpayer may be advised from the public records in the treasurer's office of the property that is assessed and the amount assessed against it. This is essential to the orderly conduct of public business and to the proper protection of the public interests, as well as to the rights of the individual taxpayer. Records in such an important matter cannot be kept by loose 'scraps of paper,' even though the same are signed by the treasurer and have a registry receipt pinned thereto. It is a matter of common knowledge that treasurers as a rule are supplied with a permanent book in which omitted property is listed and assessed and the taxes levied. But even without such book so specially designated, the treasurer must in some way substantially comply with the requirements of the statute in regard to preserving a permanent record of the listing, assessment, and levy of taxes. In the instant case, if the taxpayer, after re-

ceiving the demand, had gone to the county treasurer's office, he could have found no record of any listing, assessment, or levy of any tax against him at all."

On page 1095 of the report [N. W. page 5], the court states: "but there can be no tax to demand until there has been a listing and an assessment, and a record made thereof." All of this was done in this case. What is a listing and assessment? In Ballentine's Law Dictionary [Edition 1930], the word assessment is thus defined:

"The word ordinarily implies an official listing of the persons and property to be taxed, and a valuation of the property of each person as a basis of apportionment. This is usually done by officials specially appointed for the purpose, but in the case of taxes laid upon solvent securities, certificates of deposit, mortgages, undivided profits, or the like, the nominal or face value of which is identical with the actual value, the assessment may be made by the legislature without the intervention of assessing officers."

The listing, assessment, and levy was recorded in a permanent record, the 1929 tax list. This was done on July 18, 1930, and the written demand for settlement was made on July 21, 1930, and the refusal to comply was by letter dated August 18, 1930. We must hold that there was sufficient compliance with the statutes and our interpreting decisions.

Appellant has filed with us statements from county treasurers of the state, obtained subsequent to the trial, showing that in responses received from 83 treasurers out of 93 who answered, the omitted assessments were made on the current tax list, as was done in this case. Appellant files these statements as proof of practical construction of the statutes, and cites in support thereof the case of Muller v. Oregon, 208 U. S. 412, 28 S. Ct. 324, 52 L. Ed. 551, 13 Ann. Cas. 957. We do not find it necessary to consider these statements, and we do not consider them.

Appellees also urge that the assessment is not sufficiently specific, in that it does not designate each item of moneys and credits, and the value thereof. The assessment was just as specific as the deceased's assessment roll. Section 7116 of the Code then in effect provides for the assessment roll for moneys and credits,

and it states that "the assessor shall carry the *aggregate moneys and credits* of such persons * * * to the regular schedule." (Italics supplied.) In our judgment, it is only the aggregate that need be carried on the tax list prepared by the auditor for the treasurer. The assessment and the notice thereof was sufficiently specific to advise the executors of the nature and extent of the demand. We are constrained to hold that this objection is without merit. It is our judgment, that the court was in error in refusing to admit in evidence Exhibit No. 1.

II. In their brief and argument appellees have moved to strike the abstract and to dismiss the appeal and affirm the judgment. One ground being because of undue delay and laches in prosecuting the appeal. Another being that appellant was relying upon an assessment by the state board of assessment and review, and has failed to establish such an assessment. They also filed a motion to dismiss the appeal because the corrected judgment entry below was not made until October 28, 1938, and that no appeal was taken therefrom. These motions are each and all denied. Another motion filed by appellees asks that the order of this court of April 4, 1939, that proceedings below be stayed "until further order of this court" be annulled. This motion is also denied.

It is the judgment of the court that the judgment appealed from be reversed, and that the judgment which this court in cause No. 44097 (224 Iowa 1147, 278 N. W. 330), directed to be entered below, that the original judgment was entered not earlier than the 12th day of December, 1935, be the final disposition of that phase of the case without right of new trial or retrial on that issue, and that any proceedings for new trial thereon be dismissed. The cause is, therefore, remanded for trial upon the issues involved in the pleadings.—Reversed and remanded.

RICHARDS, C. J., and MITCHELL, STIGER, HAMILTON, OLIVER, and MILLER, JJ., concur.

HALE, J., takes no part.