**CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY,** Appellant,

v.

**DU–MOR CROP CARE CO.; D & B Morton Fertilizer Service, Inc.; Donald Morton and Iowa Department of Transportation, Rail and Water Division,** Appellees.

No. 92–484.

Supreme Court of Iowa.

May 19, 1993.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, NEUMAN, and SNELL, JJ.

CARTER, Justice.

Petitioner, Chicago and North Western Transportation Company (CNW), who sought judicial review of agency action under Iowa Code section 17A.19 (1989), appeals from an adverse decision. At issue is the refusal of the Iowa Department of Transportation (IDOT) to approve CNW's request to abandon a 560–foot spur track that serves a single customer in Grand Mound, Iowa.

The agency decided the case adversely to CNW's request on three grounds: (1) that CNW is bound to continue to maintain the spur track under the terms of a written agreement, (2) that the sustaining of economic losses by CNW in connection with maintaining this spur track does not justify abandonment thereof as long as CNW's operation of its entire system is profitable, and (3) that public interest considerations require the continued availability of this track for freight shipments. The district court's affirmance of the agency decision was based entirely on the first ground. In our review of the district court's order, we consider the second and third grounds as well. After reviewing the record and considering the arguments presented, we vacate the decision of the district court and remand the case to the agency for redetermination of certain issues consistent with this opinion.

The spur track at issue in this litigation was constructed by CNW for Arco, the chemical division of Atlantic Richfield Company, in 1971. A written agreement between Arco and CNW executed on September 4, 1971, provided that Arco was to pay CNW for the cost of construction estimated at $9570. This agreement further provided that CNW would grant Arco designated shipping rebates on loaded cars received by it at the Grand Mound location. These rebates were to continue over a five-year period and were designed to reimburse

S.P. DeVolder and Jan M. Mohrfeld of Gamble & Davis, Des Moines, for appellant.

T. Scott Bannister of Hanson, Bjork & Russell, Des Moines, for appellees Du–Mor Crop Care Co., D & B Fertilizer Service, Inc., and Donald Morton.

Bonnie J. Campbell, Atty. Gen., David A. Ferree, Sp. Asst. Atty. Gen., and Carolyn J. Olson, Asst. Atty. Gen., Ames, for appellee Iowa Dept. of Transp.

Arco for the approximate cost of the spur track.

After the conclusion of the five-year rebate period, paragraph twenty of the agreement made CNW responsible for ordinary maintenance of the spur track, which was defined as "repairs, additions, betterments and changes to the track, and the removal of snow, ice, weeds and other obstructions therefrom." Under paragraph four of the agreement, Arco was required to pay the cost and expense of changes in the track and of all construction made necessary by the maintenance or operation thereof.

In 1973, Arco's rights under the contract were assigned to First Miss., Inc., which also assumed Arco's obligations to CNW under the agreement. In 1974, First Miss., Inc. assigned its interest in the agreement to D & B Morton Fertilizer Service (Du–Mor), which also assumed the corresponding obligations to CNW. At the time of the original contract, Arco was a major shipping customer of CNW both in Iowa and other states. Both Arco and First Miss., Inc. operated a substantial chemical manufacturing operation at the Grand Mound location, and all ingredients for that process were received by rail over CNW's main line.

When Du–Mor acquired this facility in 1974 and succeeded to its predecessors' interest in the spur track agreement, it kept the facility entirely closed from 1974 to 1977. In 1977, it commenced a small operation at that site, which engaged in retail sales of bulk fertilizer to local area farmers. From 1977 through 1982, Du–Mor received an average of ten carloads of phosphate material per year over the spur track. Thereafter, yearly shipments were as follows:

| 1983 | 3 cars |
| 1984 | 3 cars |
| 1985 | 1 car |
| 1986 | 4 cars |
| 1987 | 6 cars |
| 1988 | 6 cars |
| 1989 (1–1 through 6–1) | 1 car |

Total revenues paid to CNW from 1983 through June 1, 1989, as found by the agency, totaled $11,379.

On December 6, 1988, CNW filed an application with the Iowa Department of Transportation pursuant to Iowa Code section 327G.64 (1987) requesting permission to abandon the spur track on the basis that the cost of maintaining the track greatly exceeded past, current, and anticipated revenues from Du–Mor's use thereof. Following a hearing on the application, the request was ultimately denied by the highest agency authority. That order was upheld by the district court on CNW's petition for judicial review. Other facts that bear on the issues will be discussed in our consideration of the legal claims presented.

## I. *Scope of Review.*

In reviewing agency action, our goal is to determine whether substantial rights of the petitioner have been prejudiced because of error of law or lack of evidentiary support in the record as a whole for crucial agency findings. Iowa Code § 17A.19(8)(e), (f) (1989). This scope of review has been applied in reviewing IDOT decisions concerning spur track abandonment. *Chicago & N.W. Transp. Co. v. Golden Sun Feeds, Inc.*, 462 N.W.2d 689, 691 (Iowa App.1990).

## II. *Public Interest Considerations.*

■ The agency based its denial of abandonment, in part, on "convenience and necessity" reasons based on the anticipated consequences that the abandonment would have on the seventy to one hundred farming units that were Du–Mor's fertilizer customers. In reviewing the record, we conclude that there is not substantial evidence to support the agency's denial of abandonment based on the situation of these fertilizer customers. Their use of Du–Mor's fertilizer products was not quantified in the evidence. Nor was it demonstrated that Du–Mor could not provide those customers with comparable products at an affordable price should it become necessary to obtain its raw materials by truck. It was also not demonstrated that affordable comparable fertilizer products were not available to Du–Mor's customers from other suppliers.

We conclude that the situation surrounding Du–Mor's customers was far too specu-

lative to qualify as a public interest consideration that militates against abandonment of the spur track. Consequently, we believe that the present dispute should be determined entirely on the economic and contractual interests of CNW and Du–Mor and that the situation of Du–Mor's customers should be ignored.

### III. *Profitability of CNW's Operation as a Whole.*

■ There is language in the various agency orders that indicates a belief that losses to CNW in operating the spur track at Grand Mound cannot justify abandonment of that spur as long as the railway company is making a profit on its entire system. This principle is somewhat analogous to the following commentary on abandonment of railroad branches.

> The general rule is that a railroad company that derives large profits from its entire system cannot justify the abandonment of a portion thereof on the ground that its operation is attended with a loss. In considering the question whether or not a railroad company should be compelled to continue the operation of a branch line, the entire revenues of the system are to be considered, and not merely the direct return from the branch line itself; in other words, the branch line is not to be considered as an independent enterprise, but rather in the nature of a feeder to the system.

65 Am.Jur.2d *Railroads* § 187, at 448–49 (1972) (footnotes omitted).

We think the policies underlying the foregoing commentary are directed at proposals to discontinue a certain segment of a railroad's main line. Those principles have slight, if any, application to a request to abandon a spur track that serves a single customer and that was installed pursuant to a private agreement.

### IV. *The Effect of the Written Agreement.*

■ Paragraph thirteen of the contract between CNW and Arco, to which Du–Mor has become a successor in interest, provided that CNW could unilaterally·discontinue, disconnect, or remove the spur track for any one of the following circumstances:

> [If Arco] shall discontinue the use of said track, ... shall fail to pay when due any amount owing to [CNW] under this agreement, or shall fail to perform any other obligation hereof.... Additionally, [CNW] may terminate this agreement in the event that service upon such track cannot be continued, because of changes in other tracks or in [CNW's] operating requirements.

IDOT has the power to determine whether spur tracks may be abandoned by shippers subject to the criteria set forth in Iowa Code section 327G.64(3). That statute provides:

> A railroad corporation or any other party may make application to the department for permission to discontinue service on or remove a spur track. The department shall consider the location, necessity and expense of maintaining such track and other equitable considerations. The department may order the railroad company to discontinue service or remove the spur track, and may allocate the cost of removal between the parties in an equitable manner.

The administrative law judge's decision adopted by the highest level of agency authority concluded that with respect to this statute "the paramount equitable consideration is the agreement between the parties." The agency found that CNW had failed to establish any of the grounds for discontinuing the spur track that are set forth in paragraph thirteen of the agreement. Consequently, it concluded that abandonment of the spur should be denied because of CNW's continuing contractual obligations.

We have recognized that a contract between a carrier and a consignee may provide a basis for deciding disputes of this kind. *Cedar Rapids & I.C. Ry. & Light Co. v. Chicago, R.I. & P. Ry.*, 145 Iowa 528, 124 N.W. 323 (1910). We believe, however, that the agency's interpretation of CNW's contractual obligations in the present case is unduly obligatory. We have recognized that:

It is a well established rule that, if the intention of the parties and the consideration on which an obligation is assumed by one party is that there shall be a corresponding obligation on the part of the other party, the law will imply such obligation.

*Meader v. Incorporated Town of Sibley,* 197 Iowa 945, 950–51, 198 N.W. 72, 74 (1924). Under paragraph sixteen of the agreement, neither Arco nor its immediate successor in interest, First Miss., Inc., could assign its interest therein without the written approval of CNW. We do not believe that it was the intention of the parties at the time CNW approved assignment of the agreement to Du–Mor that CNW would obligate itself to perpetually maintain this spur track without sufficient corresponding revenues from its use by Du–Mor to justify that maintenance.

■ Based on the circumstances presented in this case, we believe the agency should have recognized that CNW's obligation to continue to maintain the spur track is conditional upon a "reasonable" shipping volume being received by Du–Mor. The determination of what is a reasonable shipping volume on Du–Mor's part is a matter best decided by the agency. We conclude, however, that the criteria for that determination should not permit CNW to suffer unreasonable economic losses from continuing to maintain the spur track in question.

The factors that bear on the shipping volume that should be required of Du–Mor should only encompass the period of time that it has been an assignee of the spur track agreement. We reject the suggestion in the agency's decision that profits realized by CNW during the period that the facility was operated by Du–Mor's predecessors must be amortized over the entire period of time that the agreement is in force in assessing whether CNW is suffering economic loss by maintaining the spur track. The relationship between Du–Mor's use of the track and its predecessors' use thereof is too attenuated to be a factor in the abandonment decision.

As a result of the conclusions we have reached, we believe the agency applied an incorrect standard in deciding this matter based on its misconception of the correlative obligations of Du–Mor in the carrying out of the agreement between the parties. The district court was incorrect in perpetuating that misconception. To correct this situation, we vacate the decision of the district court and remand the case directly to the agency for redetermination of the issues in a manner consistent with the views expressed in this opinion.

**VACATED AND REMANDED.**