JAMES BROCKWAY AND OTHERS, v. THE BOARD OF SUPER-
VISORS OF LOUISA COUNTY, IOWA, AND OTHERS, Appel-
lees, and HOWARD L. LETTS AND OTHERS, Appellants, v.
THE INDEPENDENT SCHOOL DISTRICT OF OLIVE
BRANCH, AND OTHERS, Appellees.

Schools: ESTABLISHMENT OF HIGHWAYS: TAXATION. A school dis-
1  trict has power to procure the opening of a road for the purpose
of rendering a school accessible, and is not required to pro-
ceed by condemnation but may secure the same by purchase
and may levy a tax to pay therefor.

Same: CERTIORARI. Certiorari will not lie to review or annul the
2  act of a school board in procuring a road to a school house
and levying a tax to pay therefor.

Taxation: FRAUD: INJUNCTION. The collection of a tax properly
3  levied to defray the cost of procuring a road for school pur-
poses will not be enjoined, even though the School Board may
have been guilty of collusion and fraud in increasing the cost
of the same.

School bonds: DETERMINATION OF VALIDITY. The validity of bonds
4  issued to defray the cost of procuring a road to a school house
will not be determined in proceedings to enjoin the collection
of taxes levied to pay the same and proceedings to review the
action of the Board in issuing the same, to which the holders
of the bonds were not made parties.

*Appeal from Louisa District Court.*— HON. JAMES D.
SMYTHE, Judge.

WEDNESDAY, FEBRUARY 13, 1907.

THE opinion states the case.

*Fred D. Letts* and *L. A. & R. L. Riley,* for appellants.

*C. A. Carpenter* and *Oscar Hale,* for appellees.

WEAVER, C. J.— The facts to be considered in this case may be stated as follows: The schoolhouse in the rural independent district of Olive Branch is situated at the common corner of sections Nos. 19, 20, 29, and 30 in Grand View township, county of Louisa. From this corner at the inception of the present controversy there extended public highways to the east, west, and south, which highways afforded direct access to the school for most of the school population of the district, numbering about sixty persons. But there was one family having members of school age residing forty rods north of the schoolhouse having no outlet by public road, and another family with other children of school age residing one mile north, and from whose home the nearest public way to the schoolhouse was along the north, west, and south sides of section 19, a distance of about three miles. It appears that at about this time some persons interested therein set in motion proceedings to establish a public road extending north from the schoolhouse corner a distance of two miles. In conjunction with this effort, or at least with some relation to the fact that such effort was being made, it was proposed that the school district should take measures to establish or to assist in establishing that portion of the contemplated road lying between sections 19 and 20, and thus afford direct access to the schoolhouse from the north. Pursuant to this plan, the board of directors held a meeting on October 31, 1903, " to consider buying a road through for C. Lett's children or to pay their tuition to the Linn Grove school." At this meeting it was voted to consult the county attorney and obtain instructions how to procure the establishment of the road, and a committee was appointed to prepare a petition to the board of supervisors for the opening of the road one mile north for the accommodation of the school district, and at the same time another committee was authorized to prepare another petition in the interest " of the general public " for the extension of such road an additional mile. Thereafter, presumably upon

petitions thus originating, though that fact does not clearly appear, the board of supervisors did order the establishment of the road for the entire two miles upon payment of the assessed damages.   The total allowance of damages aggregated a little more than $2,000, of which there was awarded to the owners of land along the south one mile of the route $951.   At the annual meeting of the electors of the school district in March, 1904, and pending the proceedings before the board of supervisors to which we have referred, it was ordered by a vote of 10 to 1 that the board of directors be given " power to levy a tax to open the road from the schoolhouse one mile north, providing the road is opened one mile further north by subscription."   On February 2, 1905, there was a called meeting of the electors at which a proposition to " levy a tax of 10 mills to buy a road between sections nineteen and twenty in the interest of the district " was carried by a vote of 31 to 16.   On July 20, 1905, at a special meeting of the board of directors, a resolution was adopted by which, after reciting the previous steps taken for the levy of said tax and estimating the revenue to be derived therefrom at $1,000, it was ordered that, whereas the money thus derivable could not be collected until the following year, school tax funding bonds to that amount payable November 1, 1906, should be issued and negotiated.   On this authority a bond or bonds to the amount of $1,000 were issued and negotiated, and the money thus obtained was paid into the hands of the county auditor in satisfaction of damages assessed for the establishment of the road.

On October 17, 1905, the plaintiffs, who are taxpayers within said district, began action in equity in the district court, making the board of supervisors, the county auditor, and the county treasurer parties defendant, but not impleading the school district or the holders of the bonds, asking that the levy and collection of the ten-mill tax be permanently enjoined as unauthorized and void.   On the follow-

ing day some of the plaintiffs united in instituting another action in the same court, joining as defendants the school district, its directors, secretary, and treasurer, and asking a writ of *certiorari* for the certification of the record of the district with respect to said tax and for judgment on final hearing for the restoration to the district of " all funds wrongfully diverted therefrom." A writ of *certiorari* was issued accordingly and proper return made thereto. The district court denied the relief asked in each instance, and both cases have been brought to this court upon the appeal of the plaintiffs. The two cases seem to have been submitted to the trial court together, and, as they are presented here upon a single abstract, we shall dispose of them in one opinion.

I. Taking up first the *certiorari* proceedings, let us inquire as to the nature and extent of the power conferred upon the school district to procure the establishment of public roads. By Code, section 2749, the electors of the district in annual meeting assembled are given the power " to authorize the board to obtain at the expense of the corporation, roads for proper access to its schoolhouses." By section 2750 it is further provided that the board of directors may call a special meeting of the electors of the district at which a tax may be voted for the purpose of obtaining roads to a schoolhouse site. In section 2815 we find a provision for condemning such road when the owner refuses or neglects to convey the same, or when he is unknown or cannot be found. We think it very clear from these provisions that the district is not required to proceed by condemnation unless such a proceeding becomes necessary by inability to secure a conveyance. In granting the power to " obtain " the opening of public roads for better access to a schoolhouse, it is fairly implied that the district may accomplish that purpose by purchase or by any of the usual and appropriate methods by which a public way may be established. To give the roads

1. SCHOOLS: establishment of highways: taxation.

thus established a public character and make them subject of maintenance and repair by the road supervisor, it would seem appropriate, if not necessary, to provide their establishment by the ordinary method of applying therefor to the board of supervisors. At any rate, we have held it entirely competent for the directors and electors to thus petition the board of supervisors for a road for the benefit of the district, and that the funds of the district may be lawfully appropriated for the payment of damages assessed in such proceedings. *Locker v. Keiler,* 110 Iowa, 707.

Indeed, the decision here cited seems to be controlling upon the most of the propositions presented in the present appeal. We have therefore to hold, against the position

2. SAME: *certiorari.*

taken by the appellants, that it was within the power of the district by its electors and officers to procure the opening of the road and to pay therefor by levying a tax for that purpose. Such authority being found in the statute, the act of the district and its board of directors cannot be said to have been illegal or without jurisdiction, and therefore *certiorari* will not lie to review or annul the same. Code, section 4154; *Eels v. Bailie,* 118 Iowa, 521. The evidence offered by appellants in the court below was largely devoted to showing that the road was not in fact needed for the accommodation of the district, or, rather, that the need, if any, was slight in comparison to the expense incurred. This, however, was a matter which the law committed to the discretion of the defendants, and the court will not by its writ assume to control it. *Tiedt v. Carstensen,* 6 Iowa, 334; *Bogaard v. Plain View,* 93 Iowa, 269.

II. What we have above said is in effect decisive of the appeal in the equitable action. The petition to enjoin

3. TAXATION: fraud: injunction.

the collection of the tax is grounded upon the theory that its levy was ordered without legal right or authority. For the reasons already stated, we are constrained to hold otherwise. The

electors in annual meeting and in special meeting acted within their statutory power in authorizing the directors to obtain the road, and the directors do not seem to have exceeded or abused the power thus conferred. It is said the board of supervisors improperly included in the damages allowed to land-owners the cost of building fences, thereby materially enhancing the assessment of damages; but surely that is a matter into which the court cannot inquire in a collateral proceeding. The board was acting within its jurisdiction, and, if the damages allowed were excessive, the error did not have the effect to render its finding void. Nor do we find anything in the record tending to impeach the good faith of the directors of the district in their conduct of the proceedings. But, even if it were a fact that they were guilty of fraud or collusion and thereby increased the expense of establishing the road, it might render them personally liable to the district in damages, but could not have the effect to deprive the district of the road or invalidate the tax levied to pay therefor.

III. Counsel insist that in any event the board of directors had no authority to issue bonds, and that such alleged obligations are void and of no effect. As the holders of these bonds have not been parties to the litigation, their rights in the premises cannot be thus indirectly adjusted, and we must decline to pass thereon. *Ramsay v. Marble Rock,* 123 Iowa, 7; *Slutts v. Dana* (Iowa), 109 N. W. 794.

4. School bonds: determination of validity.

It follows from the foregoing discussion that in both cases the judgment of the district court was correct, and the same is in each instance *affirmed.*