WOODBURY COUNTY and D. B. SHONTZ, Appellants, v. O. B. TALLEY, Treasurer of Woodbury County.

**Taxation:** OMITTED PROPERTY: NOTICE: SUFFICIENCY. The notice of
1 a county treasurer of his intention to assess "moneys and credits" as omitted property, and reciting that the same consisted of notes and corporate stock, was sufficient to inform the corporation of an intention to assess corporate stock; especially where the cor-

poration appeared by counsel before the treasurer in response to the notice.

**Same:** CAPITAL STOCK: ASSESSMENT ROLL: DESCRIPTION. Where the entries upon the assessor's book indicated that the capital stock of a trust company had been assessed, the fact that the trust company was the owner of stock in a bank of about the same value, which did not appear to have been assessed, did not warrant the inference that the assessment made was upon the bank stock and not upon the capital stock of the trust company.

**Same:** VALUATION OF PROPERTY: FRAUD. Where an assessment is for a substantial amount and there is no material disparity between the amount and the actual value of the property fraud will not be imputed to the taxing officers so as to invalidate the assessment.

**Same:** VALUATION OF PROPERTY. Where property has once been assessed though at an undervaluation not amounting to fraud it can not be again assessed as omitted property.

**Same:** ASSESSMENT OF CAPITAL STOCK: EVIDENCE. In this action to review an assessment of omitted property the evidence is held to show that the capital stock of a loan and trust company was not assessed in a particular year.

**Same:** STATEMENT BY CORPORATION: EFFECT. Statements which the statute requires a corporation to furnish an assessor relating to the value and description of its capital stock and real estate are in the nature of admissions, which may be considered by the treasurer in determining whether property of the corporation has been omitted from assessment, whether the same were ever before the assessor or not.

**Same:** ASSESSMENT BY TREASURER: RECORD. It is essential that the treasurer in assessing omitted property make a record of his action in some form, and this may be done in the manner prescribed for listing omitted property generally, by an entry in the tax list or other book kept for the purpose of evidencing the final determination of the treasurer.

**Same:** VALUATION OF PROPERTY BY TREASURER: REVIEW. The county treasurer alone is clothed with authority to determine the value of omitted property for the purpose of taxation, and no appeal lies from his finding, nor can the amount of his assessment be reviewed by *certiorari*.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

WEDNESDAY, FEBRUARY 15, 1911.

A writ of certiorari was issued to the County Treasurer returnable to the District Court which upon hearing was dismissed. The plaintiffs appeal. *Affirmed.*

*Ben McCoy, McCoy & McCoy,* and *Struble & Struble,* for appellants.

*F. E. Gill* and *Shull, Farnsworth & Sammis,* for appellee.

LADD, J.—The Farmers' Loan & Trust Company was duly notified by the treasurer of Woodbury county of his purpose to assess it on moneys and credits described as consisting of notes and shares of corporation stock, etc., "withheld or omitted from taxation in 1903 and the five years following in the sum of $600,000 each year, and a time in February, 1908, fixed for hearing." At the time designated, the company appeared by counsel, and a full hearing was had. The treasurer filed a written opinion finding that the company was assessed by the assessor for the years 1903, 1905, 1906, and 1907, and each of said years, . . . and that said assessments, whether right or wrong, are not reviewable, and that for 1904 "no assessment was made of the Farmers' Loan & Trust Company except as a stockholder in the First National Bank of Sioux City, Iowa, and that said assessment was made by the assessor in assessing the stock of the First National Bank, and not intended as an assessment of the Farmers' Loan & Trust Company. I therefore conclude that said Farmers' Loan & Trust Company should be assessed for the year of 1904, and find the net value of its shares of capital stock, after all deductions as provided by law, to have been $564,626, one-fourth of which, or taxable value, was $141,156, and said Farmers' Loan & Trust Company is

accordingly so assessed, to which said Farmers' Loan & Trust Company excepts." Subsequently the treasurer entered on the tax list an assessment of the capital stock of said company for 1904 of $41,923 and computed the taxes payable at $3,269.99, and for this amount the treasurer sued the company, filing his petition March 26, 1909. This action was begun in December of the same year, and, in return to a writ of certiorari, a transcript of the proceedings before the treasurer and the evidence upon which he acted were filed in the district court. The plaintiff prayed "that an assessment be made against said shares of stock and against said Farmers' Loan & Trust Company for said years 1903 to 1906, inclusive, in the values herein set out; and that the action of said treasurer in refusing to assess said stock for the years 1903, 1905, and 1906, be annulled, set aside, and held for naught, and that a true and correct assessment of said stock for the year 1904 be made, and that the plaintiff have judgment for costs in this action." The plaintiff moved for judgment as prayed, and defendant moved to quash the writ and to dismiss, and also filed a plea in abatement. These papers are too prolix to permit of setting out their substance even, and we shall give attention only to such matters as seem essential to dispose of the case.

I. The treasurer's notice addressed to the Farmers' Loan & Trust Company is said to have been insufficient in that it named "moneys and credits" as the omitted property

1. TAXATION: omitted property: notice: sufficiency.

he proposed to assess, and not corporation stock. The latter was the only property claimed to have been omitted; but "moneys and credits" were described in the notice as consisting of "notes and corporation stock," so that the company was apprised that such stock might be contemplated. This was all that was necessary in view of the fact that the company appeared by counsel and the only controversy related to the assessment of its corporate stock.

II. The county treasurer held that the company's capital stock was assessed in 1903, 1905, and 1906. The plaintiffs contend: (1) That in none of these years was there such an assessment; and (2) if there was that it was so inadequate that it should have been treated by the treasurer as none at all. On the assessor's book of 1903 as returned to the county auditor, the assessment appears as follows: In the column under "Owners' Names," is the name of the company, and in the column under "Corporation Stock" and "Actual Value" is $90,068. For 1905 the entry in the first column is the same, and in the second mentioned it is "$183,612," and in the column under "Moneys and Credits," "Actual Value," is "$61,704." For 1906 there are two entries: (1) The entry in the first column is as above, and, in that under "Corporation Stock," "$40,472." (2) In the first column is "First National Bank Shareholders Farmers' Loan & Trust Company," and, in column under "Corporation Stock," "$129,600." The company had submitted what appears to have been a full statement of its assets to the assessor each of the above years, and these were before the treasurer. In them it was disclosed that the company owned stock in many banks, among which was the First National Bank of Sioux City. One thousand nine hundred and seven of the two thousand shares of said bank stock were assessable to it, and plaintiffs contend that an examination of the several statements of the company demonstrates that in the years mentioned the assessments were of the National Bank stock instead of the capital stock of the Farmers' Loan & Trust Company. It may be conceded that there is strong ground for so suspecting; but, as against the entries plainly indicating the assessment of stock to the company without indicating it to be stock of a corporation other than that of the company, the court was not warranted in assuming from the similarity of the valuation of the bank shares that these were intended and

2. SAME: capital
stock: assess-
ment roll:
description.

assessed rather than the company's stock. For all that appears, it may be mere matter of coincidence, or the assessor may have thought the bank stock and the company's capital stock of about the same value. The assessor's books plainly indicated the assessment of the capital stock, and the mere fact that the shares in the bank were of the same or nearly the same value, or that they do not appear elsewhere on the assessor's books, did not warrant the inference that these rather than the capital stock were assessed.

Nor were the assessments so inadequate that they should be regarded as none at all. The assessments were for substantial amounts, and the showing was such as to justify the conclusion that the assessor and reviewing board exercised their judgment honestly, though possibly erroneously, in estimating the value of the stock. Intentional fraud cannot be imputed to them, for the disparity between the assessment and the actual value was not so gross that it may not be attributed to honest misjudgment. See *County of Otter Tail v. Batchelder,* 47 Minn. 512, (50 N. W. 536); *Parker v. New Orleans Gaslight Company,* 44 La. Ann. 753, (11 South. 32); *State Board of Equalization v. People,* 191 Ill. 528, (61 N. E. 339, 58 L. R. A. 513).

3. SAME: valuation of property: fraud.

We are of the opinion that the treasurer rightly concluded that the company's capital stock had been assessed, and for this reason ought not to be regarded as omitted property. *German Savings Bank v. Trowbridge,* 124 Iowa, 514,; *Security Savings Bank v. Carroll,* 128 Iowa, 230; *People's Savings Bank v. Layman* (C. C.) 134 Fed. 635.

4. SAME: valuation of property.

III. For the year 1904 the entries on the assessor's book are as follows: In the first column, under "Owners' Names," "First National Bank," with "Farmers' Loan & Trust Company" immediately below, and, in the column headed "Corporation Stock," "Actual Value," directly opposite "First Na-

5. SAME: assessment of capital stock: evidence.

tional Bank," is "$102,078." The treasurer found that this was an assessment of shares in the bank, and that the name of the company no more than indicated the owner of the stock. Though, with some hesitation, we are inclined to entertain the same opinion. The shares in the national bank owned by the company were assessable to it, and these do not appear to have been otherwise assessed. Moreover, the above amount is nearly the same as the value of the bank stock consisting of one thousand nine hundred and eight shares, according to the company's statement to the assessor for 1904, showing large deductions invested in real estate; its difference being less than $400.

Some question is made as to whether these statements were shown to have been before the assessor. They purport to have been made to the assessor and furnished such infor-

6. SAME: statement by corporation: effect.

mation as is exacted by section 1323 of the Code, and, being in the nature of admissions, were properly considered by the treasurer whether ever before the assessor or not. And the statement of 1904 showed that, while the company had capital stock, surplus, and profits of the estimated value of $915,000, it claimed deductions because of real estate holdings and property assessed in other taxing districts amounting to $971,840. So that, if the statement was employed for the purpose it appears to have been prepared, the assessor, if he relied on it, must have concluded that the bank stock was all it had that was assessable in Sioux City and made no other. The treasurer rightly decided that the company's capital stock was not assessed for 1904.

IV. In the written opinion, the treasurer found the actual value of the capital stock in 1904 to have been $564,626 and its taxable value $141,156, but did not com-

7. SAME: assessment by treasurer: record.

pute the amount of taxes or interest then payable. Within a reasonable time he entered the assessment in the tax list as $41,923 taxable value and the amount of taxes owing as $3,269.99, and

for such amount the treasurer subsequently instituted suit against the company. Plaintiffs contend that in entering the $41,923, instead of $141,156, in the tax list, the treasurer acted illegally. This may depend on what constituted the final determination by the treasurer, for, if this be the entry in the tax list, he might correct or modify any previous finding or opinion so as to conform with the facts or law as he finally concluded in making the final entry. Moreover, the assessment as enacted by section 1374 of the Code, even if it might be made merely by writing an opinion, includes a finding of the amount of taxes and interest required, and, as said, the opinion contained nothing of the kind, while the entry in the tax list was complete. It is quite as important that records of such assessments be made as of assessments by other officers. The auditor is required to "transcribe the assessments of the several townships, towns, or cities into a book, to be provided at the expense of the county for that purpose, to be known as the tax list." Section 1383, Code. He may correct any error in the "tax list and may assess and list for taxation any omitted property." Section 1385-b, Code Supp. 1907. Section 1374 of the Code, authorizing the county treasurer to assess property withheld or omitted from taxation, does not prescribe in what manner such assessment shall be evidenced in the records of the county. In *Galusha v. Wendt*, 114 Iowa, 597, the demand for the amount for which the omitted property should have been taxed, with interest, on the delinquent taxpayer, was held to constitute the assessment necessary; but afterwards the Legislature enacted that: "Before listing the property discovered, the treasurer shall give the person in whose name it is proposed to assess the same or his agent ten days' notice thereof by registered letter addressed to him at his usual place of residence, fixing the time and place where objection to such proposed listing and assessment may be made." Section 1407-a, Code Supp. 1907. An appeal from the "final ac-

tion of the treasurer" is authorized. It is plain from this that the statute now contemplates the "listing and assess- ment" after the delinquent has been afforded an opportunity of being heard, and the language of the statute seems to exact an entry in the tax list by the treasurer either in the book delivered to him by the auditor or another kept for that purpose. It was said in *Re Morgan,* 125 Iowa, 247, that "the determination by him that the property has been omitted and his ascertainment of the amount thereof is taken as a substitute for the assessment required by the general provisions of the statute relating to that subject." How shall this be evidenced? There must be a listing of the property to be taxed in some form (*Judy v. National State Bank,* 133 Iowa, 252), and, as no other is specified, we think the Legislature must have contemplated that prescribed for listing assessed property generally. This supplies a permanent record which is in the interest of the taxpayer as well as the public. It follows that the entry in the tax list or other book kept for the purpose evidences the final determination of the treasurer. See *Snakenberg v. Stein,* 126 Iowa, 650. The action of the treasurer in entering in the tax list the capital stock at a lower valuation than indicated in the written opinion, in the absence of any showing of fraud or mistake, was not illegal.

V. No appeal by the county lies from the final determination by the treasurer in the matter of assessing omitted property. *In re Assessment of Farmers' Loan &*

8. SAME: valua- tion of prop- erty by treas- urer: review.

*Trust Co.,* 129 Iowa, 588. No claim is made that he acted fraudulently. Even though the court in this proceeding might have found on reviewing the evidence that the assessment was too low, it could not have made a new assessment or increase that of the treasurer. *Farmers' Loan & Trust Co. v. Town of Fonda,* 114 Iowa, 728, and cases therein cited. The treas- urer only was clothed with authority to determine the value

of the omitted property. In doing so, he exercised his judgment and discretion, and therein did not act illegally, even though he may not have reached a correct conclusion. It is well settled that an error of this character may not be corrected by certiorari. *Polk County v. City of Des Moines,* 70 Iowa, 351; *Brockway v. Board of Supervisors,* 133 Iowa, 293; *Tiedt v. Carstensen,* 61 Iowa, 334.

Many other matters are touched in argument, but enough has been said to dispose of the appeal. *Affirmed.*