E. R. BENNETT, County Treasurer, Appellant, v. FINKBINE
· · LUMBER COMPANY, Appellee.

**TAXATION:**   Assessment and Levy on Omitted Property—Essential
1   **Steps.**   The treasurer may not maintain an action to recover the
tax on omitted property until he has: first, made such entries in
the official tax books as will constitute a listing and assessment of
the property and a levy of the tax; and second, made a demand on
the property owner for payment.   A demand, without more, is a
nullity.

**TAXATION:**   "Manufacturer" Defined.   An Iowa corporation which is
2   engaged in the production, manufacture, and sale of lumber and
kindred commodities is a "manufacturer," within the meaning of
Sec. 1319, Code, 1897, and, therefore, is not taxable on its shares of
stock, even though all of its property is located outside the state.

**Headnote 1:**   37 Cyc. p. 1018.   **Headnote 2:**   37 Cyc. p. 822.

*Appeal from Polk District Court.—*JAMES C. HUME, Judge.

APRIL 4, 1924.

REHEARING DENIED APRIL 8, 1925.

THIS is an action at law, brought by the county treasurer, to recover taxes from the stockholders of a corporation on shares of stock which it is claimed were withheld from taxation. The trial court dismissed the plaintiff's petition, and the plaintiff appeals.—*Affirmed.*

*E. A. Lingenfelter* and *Vernon R. Seeburger,* for appellant.

*Nourse & Nourse* and *Clinton L. Nourse,* for appellee.

FAVILLE, J.—Appellee is a corporation, which was duly organized under the laws of the state of Iowa in 1901. It is engaged in the production, manufacture, and sale of lumber and kindred commodities. Its capital stock is $400,000, divided into 4,000 shares of the par value of $100 each. The tax sought to be levied is against the shares of stock in said corporation for the years 1917, 1918, 1919, and 1920. It appears that, during said period of time, appellee owned a large amount of timber land in the state of Mississippi, and operated two mills in connection therewith, and the necessary logging railroads for the movement of logs and lumber on its premises. It was also engaged in the business of distilling turpentine. It paid taxes upon its real estate and personal assets in the state of Mississippi during each of said years, in large amounts.

1. TAXATION: assessment and levy on omitted property: essential steps.

I. We first consider the question of the procedure upon which this action is based.

It appears from the record that, notwithstanding the provisions of Chapter 66 of the Acts of the Thirty-fourth General Assembly (Section 1407-f, Code Supplement, 1913), prohibiting the making of such a contract, the board of supervisors of Polk County entered into a contract with an attorney for the discovery of property that had been omitted from taxation and for the collection of taxes on the same.

On or about August 27, 1921, appellant, as county treasurer, signed a written instrument, in the form of a notice and demand. This was addressed to the appellee corporation and its officers, and contained the statement that, during each of the years 1917, 1918, 1919, and 1920, the corporation had a total capital stock of $400,000, of a taxable value of $2,000,000, taxable at a rate of .005; that the taxes for each of said years were $10,000; and the interest for each of said years on said amount was computed and set forth. This instrument recited that the county treasurer demanded payment of the amount of said taxes, together with six per cent interest thereon from the time they would have become due and payable had the property been listed and assessed; and also notified appellee that, upon failure to pay such sum within thirty days after the 29th of August, proceedings would be commenced against appellee, "as provided by law."

The county treasurer testified that said notice was prepared by the attorney employed by the board of supervisors, who presented the same to the treasurer for signature. The treasurer testified that he made no investigation of the matter, and did nothing whatever except sign the paper. On cross-examination, he testified that he made no record; that he spread nothing upon his books; and that the only record he had in the office in respect to said matter was the one sheet of typewritten paper, which was the notice and demand, with the registry receipt pinned to it. He also testified that he did not tell the attorney to prepare this notice; that the latter brought it to him, together with copy thereof, and he signed it.

After the expiration of thirty days from the time fixed in the said notice and demand, this action was commenced. The proceedings were had under Section 1374 of the Code, which is as follows:

"When property subject to taxation is withheld, overlooked, or from any other cause is not listed and assessed, the county treasurer shall, when apprised thereof, at any time within five years from the date at which such assessment should have been made, demand of the person, firm, corporation or other party by whom the same should have been listed, or to whom it should have been assessed, or of the administrator

thereof, the amount, the property should have been taxed in each year the same was so withheld or overlooked and not listed and assessed, together with six per cent interest thereon from the time the taxes would have become due and payable had such property been listed and assessed, and upon failure to pay such sum within thirty days, with all accrued interest, he shall cause an action to be brought in the name of the treasurer for the use of the proper county, to be prosecuted by the county attorney, or such other person as the board of supervisors may appoint, and when such property has been fraudulently withheld from assessment, there shall be added to the sum found to be due a penalty of fifty per cent upon the amount, which shall be included in the judgment. The amount thus recovered shall be by the treasurer apportioned ratably as the taxes would have been if they had been paid according to law.''

It is contended that, in the application of this statute authorizing the county treasurer to assess omitted property for the purpose of taxation, nothing more is required on the part of the treasurer, to effectuate such an assessment, than to merely sign and serve upon the taxpayer a demand of the kind disclosed in this record. Section 1374 is found in the general chapter on ''assessment of taxes.''

Code Section 1312 provides that every inhabitant of the state, of full age and sound mind, shall list for the assessor all property subject to taxation in the state of which he is the owner or has the control or management.

Section 1313 of the Code provides:

''Moneys and credits, notes, bills, bonds, and corporate shares or stocks not otherwise assessed, shall be listed and assessed where the owner lives.''

Under the general and universal rule with regard to the taxation of property, it is essential that there be a listing and assessing and a levy, in order to constitute a valid tax.

In *McCready v. Sexton & Son,* 29 Iowa 356, 388, in discussing an action involving a tax sale, we held that four things, (1) a listing and assessing, (2) a levy, (3) a tax warrant, or statutory provision for collection, and (4) a sale, were essential to effectuate a sale of property for taxes, and said:

''These are essential and jurisdictional, and every other

provision of every revenue law may safely be said to be directory only, and not essential to the exercise of the taxing power.''

In *Moore v. Cooke,* 40 Iowa 290, we said:

''The levy is a very essential step in the imposition of a tax. In *McCready v. Sexton & Son,* 29 Iowa 356, 389, it is likened to a judgment *in rem.* It would be a dangerous principle to adopt, that proof of such fact may rest in parol, notwithstanding the fact that the statute positively directs that the memory of it shall be preserved by a record in the proper book.''

See, also, *Hintrager v. Kiene,* 62 Iowa 605.

At this point, the question is as to whether or not the mere giving of a written notice to a taxpayer, by the county treasurer, and a demand that he pay the taxes claimed to be due on omitted property, are the valid listing and assessment and levy of a tax.

It is also the universal rule that it is essential to the validity of a tax levy that a written record of it should be made and kept by some proper authority.

The ''demand'' which the statute requires the treasurer to make upon the delinquent taxpayer is not directed to be made in writing. Ordinarily, a demand may be made orally, as well as in writing. Does this statute permit an oral demand by the county treasurer and a subsequent suit for omitted taxes, without more? Can this be done without any entry of a tax?

There is some analogy between this statute and Section 1398 of the Code, which provides that:

''The treasurer shall assess any real property subject to taxation which may have been omitted by the assessor, board of review or county auditor, and collect taxes thereon, and in such cases shall note, opposite the tract or lot assessed, the words 'by treasurer.' ''

That an assessment in some form is a prerequisite step to an action for the recovery of taxes is well settled by the authorities. *Worthington v. Whitman,* 67 Iowa 190; *Appanoose County v. Vermilion,* 70 Iowa 365; *Thornburg v. Cardell,* 123 Iowa 313, 319.

It is contended by appellant that, in *Galusha v. Wendt,* 114 Iowa 597, we construed Section 1374, and held that:

''The demand by the treasurer amounts to an assessment, and the action which he is authorized to bring is for the collec-

tion of taxes found due on that assessment.''

A statement to that effect is in the syllabus of the reported case, but no such statement is contained in the opinion. In the opinion we said:

''It is true that assessment is a step essential to the validity of a tax'' (citing authorities).

We also said:

''Without an assessment, there is no debt from the taxpayer, and there is no obligation on his part which can be enforced in an action.''

Also, we said:

''But the failure of the property owner to return his property for assessment, although subjecting him to various penalties, did not obviate the necessity of some assessment as a basis for the collection of the taxes on property omitted. * * * The effect of the new provision in the Code of 1897 which we are now considering is to authorize the treasurer to demand the amount of the tax which should have been collected on account of omitted property; and in determining the amount of such tax, he will necessarily exercise the authority which might have been exercised by the assessor and board of review or the auditor. The assessment is made by him, and the action which he is authorized to bring is for the collection of taxes found to be due on such an assessment. * * * But inasmuch as the action of the treasurer is not conclusive, and the duty on which his demand is based can be shown to the court in which the enforcement of the demand is sought, we do not think that the taxpayer is deprived of any constitutional right. [Citing cases.] We have held in regard to the collateral inheritance tax that the bringing of suit was not a substitute for assessment, but in such a case, there had been no omission on the part of the person who should return the property for assessment. *Ferry v. Campbell*, 110 Iowa 290.''

In *Woodbury County v. Talley*, 153 Iowa 28, in referring to Section 1374 and assessments thereunder, we said:

''It is quite as important that records of such assessment be made as of assessments by other officers. * * * Section 1374 of the Code, authorizing the county treasurer to assess property withheld or omitted from taxation, does not prescribe in what

manner such assessment shall be evidenced in the records of the county. In *Galusha v. Wendt,* 114 Iowa 597, the demand for the amount for which the omitted property should have been taxed, with interest, on the delinquent taxpayer, was held to constitute the assessment necessary."

After the adoption of the Code of 1897, the legislature (Chapter 50, Acts of the Twenty-eighth General Assembly, Section 1407-a *et seq.,* Code Supplement, 1907), provided *for the assessment by the treasurer of omitted property and for the listing and assessment* of the same after notice by the treasurer. This was known as "The Tax Ferret Law." These provisions of the statute were repealed by Chapter 66, Acts of the Thirty-fourth General Assembly, so that the law as it now stands on this subject is to be found only in the provisions of Section 1374. The case of *Woodbury County v. Talley,* supra, was decided while Sections 1407-a *et seq.,* Code Supplement, 1907, were in force.

While said act (Code Supplement, 1907, Section 1407-a *et seq.*) was in force, we repeatedly held that a listing and assessment by the treasurer was necessary, the terms of the statute so providing.

We are now confronted with the question as to what the treasurer is required to do to collect the tax on omitted property under Code Section 1374, which contains no provision as to listing and assessment by the treasurer, but only provides for a "demand" and the bringing of a suit.

In *Woodbury County v. Talley,* supra, we said:

"It was said in *Re Morgan,* 125 Iowa 247, that 'the determination by him that the property has been omitted and his ascertainment of the amount thereof is taken as a substitute for the assessment required by the general provisions of the statute relating to that subject.' How shall this be evidenced? There must be a listing of the property to be taxed in some form (*Judy v. National State Bank,* 133 Iowa 252); and, as no other is specified, we think the legislature must have contemplated that prescribed for listing assessed property generally. This supplies a permanent record, which is in the interest of the taxpayer, as well as the public. It follows that the entry in the tax list or other book kept for the purpose evidences the

final determination of the treasurer. See *Snakenberg v. Stein,* 126 Iowa 650.''

In the *Galusha* case and the case of *Woodbury County v. Talley,* supra, there are dicta to the effect that the written notice and demand by the treasurer for the amount of the tax on the omitted property, with interest, is sufficient to constitute the necessary assessment. The statements therein so made were not necessary to the decision of either of said cases, and are no more than *obiter dicta.*

In *Thornburg v. Cardell,* 123 Iowa 313, we said:

''There is an allegation of a demand, which would, perhaps, have been sufficient, under Section 1374 of the Code, before its amendment by Chapter 50, before mentioned.''

In *German Sav. Bank v. Trowbridge,* 124 Iowa 514, we said:

''Clearly, the purpose of the statute, and the sole purpose thereof, was to provide the means whereby property which had escaped the attention of the assessor or had been withheld from his knowledge might be added to the assessment rolls, and made to bear its just share of the public burdens.''

In *Kehe v. Blackhawk County,* 125 Iowa 549, we said:

''Before the amendment of Section 1374 of the Code by Acts Twenty-eighth General Assembly, page 33, Chapter 50, we had held that the demand by the county treasurer constituted an assessment.''

In *Security Sav. Bank v. Carroll,* 128 Iowa 230, we said:

''Section 1374 of the Code authorizes the treasurer to assess property omitted from taxation in previous years, and to sue for delinquent taxes thereon.''

*Judy v. National St. Bank,* 133 Iowa 252, was decided while Code Supplement, 1907, Sections 1407-a *et seq.,* were in force. Therein we said:

''Under each of these sections, the notice sent out by either the auditor or the treasurer is not an assessment. Nor is the demand made by the treasurer, under the law as it now stands, such an assessment as is contemplated by law. *Kehe v. Blackhawk County,* 125 Iowa 549. In either case there must be an assessment of the property. An assessment of necessity involves at least two things, to wit, a listing of the property to be taxed

in some form, and an estimation of the sums which are to be a guide in the apportionment of the tax. Cooley on Taxation (3d Ed.) 596. That there must be an assessment to support a tax, see *Galusha v. Wendt,* 114 Iowa 604; *Thornburg v. Cardell,* 123 Iowa 319. In the case last cited, it is expressly held that there must be a proper assessment before an action at law will lie under Section 1374 to recover taxes on omitted property."

In *Langhout v. First Nat. Bank,* 191 Iowa 957, we said:

"Therefore, unless the power conferred upon the county treasurer by the provisions of Code Section 1374 is a warrant for his listing and assessing of the shares of stock of the defendant bank as omitted property, then such power does not exist. The purpose of this statute, and the sole purpose thereof, is to provide the means whereby property that has escaped the attention of the assessor, or has been withheld from his knowledge, and which may have escaped correction by the county auditor for the current year, may be added to the assessment roll and made to bear its proper and proportionate share of public taxation."

In *Murrow v. Heath,* 146 Iowa 347, the demand was set out, and we found it to be the equivalent of the transcript of the assessment, as entered in the treasurer's omitted property tax list.

It is evident that, under our previous decisions, the question now presented before us has never been definitely decided. While Sections 1407-a *et seq.,* Code Supplement, 1907, were in force, we repeatedly referred to Section 1374 in connection therewith, and held that a listing and assessment by the treasurer were essential. There are statements to the effect that, under *Galusha v. Wendt,* supra, the "demand was equivalent to an assessment;" but, as we have already pointed out, the *Galusha* case does not so decide.

We now have the question squarely presented to us whether or not the method provided by Section 1374 of a demand by the county treasurer is the equivalent of a "listing, assessment, and levy" of a tax. The legislature undoubtedly intended, by Section 1374, to confer upon the county treasurer the power to "add to the assessment roll" property that had been omitted therefrom. But the making of a mere demand upon the tax-

payer is not a listing and assessment of omitted property.

As we have frequently said, the purpose of this statute is to place omitted property upon the assessment roll. It is to be listed and assessed, as if it had been originally listed and assessed.

Surely, there must be a record of such listing and assessment as a prerequisite to the right to demand the tax. There is no tax to demand; no tax for which suit may be brought, until this is done. The law certainly contemplates that there shall be a permanent record of all property listed for taxation, and also of the assessment and levy and the amount of tax to be paid thereon. Taxes properly levied, or taxes omitted and subsequently properly levied by the proper officers, are not to be found upon mere typewritten sheets of paper kept somewhere in a treasurer's office.

A permanent record is required with regard to these matters, so that the taxpayer may be advised from the public records in the treasurer's office of the property that is assessed and the amount assessed against it. This is essential to the orderly conduct of public business and to the proper protection of the public interests, as well as to the rights of the individual taxpayer. Records in such an important matter cannot be kept by loose ''scraps of paper,'' even though the same are signed by the treasurer and have a registry receipt pinned thereto. It is a matter of common knowledge that treasurers as a rule are supplied with a permanent book in which omitted property is listed and assessed and the taxes levied. But even without such book so specially designated, the treasurer must in some way substantially comply with the requirements of the statute in regard to preserving a permanent record of the listing, assessment, and levy of taxes. In the instant case, if the taxpayer, after receiving the demand, had gone to the county treasurer's office, he could have found no record of any listing, assessment, or levy of any tax against him at all.

It may be argued that Section 1374 does not provide specifically for any listing, assessment, and levy, but only for the making of a demand and the bringing of a suit after such demand. It is true that the statute does not so provide in terms, but it must be read *in pari materia* with the other provisions on

the manner of listing and assessing property, as contained in the same chapter of the Code.

Code Section 1403 provides that "no demand of taxes shall be necessary." Section 1374 provides for a demand as to taxes on *omitted* property, but there can be no tax to demand until there has been a listing and an assessment, and a record made thereof. The demand is for a tax, and the suit is for a tax. We think the statute fully contemplates and requires that, before the demand is made, there shall be a listing and assessment and levy of the tax by the county treasurer *in the proper tax book*, and *then* a demand upon the taxpayer for the payment of the same, and upon his failure to so pay, that the county treasurer may bring suit to recover for the tax. This is consistent and in harmony with the provisions of Section 1398 with regard to the assessment by the treasurer of real property that has been omitted. It is also consistent with the general provisions of the statute in regard to the assessment of property in general. The result of this holding is not to render Section 1374 nugatory or invalid, but merely to hold that, in proceeding thereunder, the treasurer shall make a listing and assessment of the omitted property; in other words, that he shall take the necessary and legal steps to create "a tax," and then proceed, by demand and suit if need be, to collect the tax on the property so placed on the assessment roll. Without such a proceeding, there is nothing on the assessment roll; there is no listing, no assessment, no tax. The treasurer cannot make a demand for "a tax" until a tax has been spread upon the record; in other words, there can be no tax until in some manner the essential steps universally recognized as preliminary to a legal tax have been taken. These require a listing and assessment, and, in this instance, it requires that the omitted property shall be so duly listed, assessed, and the tax shown upon the proper records in the treasurer's office. No such steps having been taken in the instant case, we are driven to the conclusion that the treasurer had before him no legal record or basis whatever upon which to make the demand upon the taxpayer, and that he was in no position to institute the present suit until such preliminary steps had been substantially complied with. On this ground alone, the court did not err in dismissing appellant's petition.

II. We next consider the question as to whether or not appellee is liable for the tax for which suit is brought, if one had been properly levied.

2. TAXATION: "manufacturer" defined.

Code Section 1319 provides as follows:

"Any person, firm or corporation who purchases, receives or holds personal property of any description for the purpose of. adding to the value thereof by any process of manufacturing, packing of meats, refining, purifying, or by the combination of different materials, with a view to making gain or profit by so doing, and selling the same, shall be held a manufacturer for the purposes of this title, and he shall list for taxation such property in his hands; but the average value thereof to be ascertained as in the preceding section, whether manufactured or unmanufactured, shall be estimated upon those materials only which enter into its combination or manufacture. Machinery used in manufacturing establishments shall, for the purpose of taxation, be regarded as real estate. Corporations organized under the laws of this state for pecuniary profit, and engaged in. manufacturing as defined by this section, and which have their capital represented by shares of stock, shall, through their principal accounting officers, list their real estate, personal property and moneys and credits in the same manner as is required of individuals. The owners of capital stock of manufacturing companies, as herein provided for, having listed their property as above directed, shall be exempt from assessment and taxation on such shares of capital stock."

Code Section 1323 is, in part, as follows:

"The shares of stock of any corporation organized under the laws of this state, except those which are not organized for pecuniary profit, and except corporations otherwise provided for in this act, shall be assessed to the owners thereof, at the place where its principal business is transacted."

It is the contention of appellant that appellee is subject to the tax in question, under the provisions of Section 1323. It is to be noticed that said statute clearly excepts from its operation "corporations otherwise provided for in this act." Corporations engaged in merchandising and corporations engaged in manufacture are "otherwise provided for in this act." We

therefore are brought immediately to the inquiry as to the nature of the business of the corporation in question.

The articles of incorporation provide that the business of said corporation is "the production, manufacture and sale of lumber and kindred commodities and to that end it may purchase, mortgage, sell and otherwise acquire, incumber or dispose of such real and personal property and it may build, purchase, lease, mortgage, control, operate or otherwise acquire, incumber, sell or dispose of such mills, factories, warehouses, stores, canals, roads, tramways, railroads and equipment as it may deem needful and convenient in the transaction of its business."

Under its articles of incorporation, is appellee the kind of corporation described in Section 1319 of the Code as a manufacturer? Its business is declared to be "the production, manufacture and sale of lumber and kindred commodities." The statute applies to a "person, firm or corporation who purchases, receives or holds *personal property* of any description for the purpose of adding to the value thereof by any process of manufacturing * * * with a view to making gain or profit by so doing, and selling the same."

Appellee corporation owns a large amount of real estate, timber land, and the necessary mills and apparatus for the business of converting timber into lumber for the purposes of sale; and its articles, after defining its business to be the production, manufacture, and sale of lumber and kindred commodities, provide that *"to that end* it may purchase, mortgage, sell and otherwise acquire real estate and personal property," etc. This ownership of real estate is a necessary incident to its business of manufacturing, and we think that, under its articles, it comes within the meaning and provisions of Section 1319 of the Code.

With this construction of the nature of the business of the corporation, it inevitably follows that an assessment cannot be levied upon the shares of stock of the corporation under Section 1323, for the reason that the assessment of *such* a corporation is "otherwise provided for in this act" by Section 1319.

In *Union Petroleum Co. v. Indian Petroleum Co.,* 192 Iowa 1373, which involved the assessment on shares of stock in a mercantile corporation, we held that, when the statute provides

a method for the assessment of property, that method is exclusive, and that, a method being provided for the assessment of mercantile corporations under Section 1318, assessment for shares of stock under Section 1323 was invalid.

The same rule must apply to a manufacturing corporation as to a merchant corporation; and, there being adequate provision in the statute for the assessment of a manufacturing corporation, the shares of stock of such corporation cannot be taxed under Section 1323.

Appellant strenuously insists, however, that Section 1319 does not apply to appellee as a manufacturing corporation, because of the fact that, while it is incorporated under the laws of the state of Iowa, and its principal place of business is in the state of Iowa, its business of manufacturing and its property are all located in the state of Mississippi. The argument is made that, it being a corporation organized under the laws of the state of Iowa, and its property being beyond the jurisdiction of this state, the shares of stock are taxable under Section 1323 of the Code.

This would be true undoubtedly if the corporation were other than a mercantile or manufacturing corporation. In other words, *if* taxable under Code Section 1323, the fact that its capital was wholly invested outside of this state and all of its business transacted in a foreign state would not absolve the shares of stock from taxation in this state. *Koochiching Co. v. Mitchell,* 186 Iowa 1216. It becomes largely a matter of classification. Being, in fact, a manufacturing corporation, it is subject to be taxed as such under Section 1319, and it cannot be taxed under both Sections 1319 and 1323.

Appellant's contention would have weight if addressed to the legislature in regard to the matter of providing for the assessment of property where a manufacturing corporation has its principal place of business in Iowa and its assets in a foreign state. We are compelled to construe the statutes as we find them to be, and as the legislature has seen fit to enact them. Our law does not provide that a manufacturing corporation, even though it has its principal place of business in this state, can be taxed upon its shares of stock in this state merely because its property is located in a foreign state. The corporation is a

manufacturing corporation, none the less, even though its actual property is located beyond the borders of the state of Iowa. The record establishes without dispute that the property of the corporation, located in the state of Mississippi, both real and personal, is taxed by said state, and that many thousands of dollars in taxes have been paid by the corporation in the state of Mississippi upon such property.

The question narrows itself to one proposition: as to whether or not, under this record, the shares of stock of the appellee corporation are subject to taxation in this state, under Section 1323 of the Code. We hold that appellee is a manufacturing corporation, within the meaning of Section 1319 of the Code, and that, although its property is not within the state of Iowa, and hence not taxable by this state because not located therein, such fact does not render the shares of stock of the corporation subject to taxation under Section 1323 of the Code.

It therefore follows that the order of the district court dismissing appellant's petition was proper, and the judgment of the trial court is—*Affirmed.*

ARTHUR, C. J., EVANS, PRESTON, STEVENS, and VERMILION, JJ., concur.

DE GRAFF, J., not participating.