MUSCATINE LIGHTING COMPANY, Appellee, v. C. H. PITCHFORTH, County Auditor, et al., Appellants.

No. 40689.

JUNE 24, 1932.

Harold E. Wilson, County Attorney, C. H. Fishburn, City Attorney, and C. R. Stafford, for appellants.

Nichols, Tipton & Tipton, for appellee.

KINDIG, J.—The Muscatine Lighting Company, the plaintiff and appellee, is a public service corporation furnishing gas to the city of Muscatine. In the year 1927 the appellee owned certain real estate which was subject to assessment and taxation. Accordingly in 1927 the assessor called upon the manager of the appellee company for the purpose of listing and valuing the real estate for assessment purposes. After an interview with the manager, the assessor listed and described the real estate for taxation and valued the same at $8,000. This property was assessed under, and the case is controlled by, the Code of 1927. All parties agree to this.

Complying with Sections 7106 and 7115 of that Code, the assessor entered the property and the valuation thereof upon the assessment rolls furnished him by the county auditor for that purpose. When so doing, the assessor, as required by Sections 7111 and 7115 of the 1927 Code, delivered to the appellee's manager a copy of the aforesaid listing and valuation for assessment purposes. Later, and in due time, the assessor, complying with Section 7121 of the 1927 Code, attached his oath to the assessment roll, including the listing and valuation on appellee's property. Then, as required by Section 7122 of that Code, the assessor laid the assessment roll before the local board of review for the correction and adjustment of assessments.

It is required by Section 7130 of the 1927 Code that the assessor be present at the meetings of the board of review and "make upon the assessment rolls all corrections or additions directed by the board." That was done by the assessor in the case at bar. Upon the occasion under consideration, the assessor presented to the board of review, according to the requirements of the statute, the assessment roll in question containing the valuation and assessment of appellee's property. The valuation and assessment of such property was approved by the local board of review as made by the assessor and as shown by the copy of the aforesaid listing and valuation delivered by the latter to appellee's manager. As was his duty under Section 7123 of the 1927 Code, the assessor, after the approval of the assessment roll by the local board of review, made "up the assessor's books in duplicate from such assessment rolls" and returned the same "to the county auditor, together with the assessment rolls, plat

book, and all statements which have been furnished to him in connection with the assessment.''

Throughout all those proceedings, the valuation of appellee's property for assessment purposes remained at $8,000, as originally fixed by the assessor. After the books were thus delivered to the county auditor, the assessments were submitted to the county board of review, as required by Section 7137. No action was taken by that body which affected appellee's property. Thereafter the assessment was submitted to the state executive council. This body raised the assessment value on appellee's and other property in the county four per cent. Consequently the assessed value of appellee's property was changed from $8,000 to $8,320. Subsequently the taxes in Muscatine County for the year 1928 were levied on the foregoing valuation, and the county auditor, as required by Section 7145 of the 1927 Code, prepared the tax lists accordingly. When the tax lists were thus prepared, the county auditor, as required by Section 7147 of the 1927 Code, delivered the same to the county treasurer in order that such official might collect the taxes due in the year 1928. At the time the tax lists were thus delivered to the county treasurer by the county auditor, appellee's property was valued, as before explained, at $8,320. The taxable value, being one-fourth thereof, was $2,080.

Apparently on March 24, 1928, C. H. Pitchforth, the auditor of Muscatine County, a defendant and appellant, felt for the first time that the valuation on appellee's property was not high enough. So this appellant conferred with the assessor, and, according to the record, the assessor declared that he intended to make the valuation $80,000. By way of explanation, the assessor said that he left a cipher off the figures. No fraud is claimed, and it is not contended that the appellee or its manager in any way induced the assessor to make the valuation of the real estate at $8,000 instead of $80,000. As before explained, the assessor was present before the board of review and there presented to that body, and with them considered, the assessment roll. It was not discovered, however, by either the assessor or the board of review, that appellee's property should have been assessed at $80,000 instead of $8,000. $80,000, it is explained, was the previous valuation on this real estate. Concerning whether there has been a recent change in property values in the com-

munity does not clearly appear in the record. In any event, the appellant auditor did not attempt himself to correct the assessment, as authorized by Section 7149 of the 1927 Code, but rather he wrote a letter to Frances B. Rosenbaum, the treasurer of Muscatine County, a defendant and appellant, and suggested that she make the correction. Hence the appellant treasurer changed the value of appellee's property on the assessment books from $8,320 to $83,200. Likewise the appellant treasurer changed the taxable value of appellee's property from $2,080 to $20,800. Thereupon the appellee tendered the amount of taxes due under the original assessment and applied to the district court of Muscatine County for a writ of certiorari, on the theory that the appellants acted without power or authority when making the change.

The writ was issued and the appellants were thereby commanded to make return of their actions in the premises. Complying with the mandate of the writ, appellants made the required return and the case was tried in the district court. That tribunal found that the appellants acted without authority or jurisdiction, and therefore it set aside the added valuation and assessment. From that action, the appellants appeal.

There are two questions involved in the controversy:

First: Did the auditor change the valuation and assessment or was the alteration made by the county treasurer?

Second: If the change was made by the county treasurer, was her action in the premises the assessment of omitted property?

A county auditor, under Section 7149 of the 1927 Code, may do two things in reference to correcting assessments: First, This official may correct an error in the assessment; and, second, he may assess omitted property. Section 7149 reads as follows:

"The auditor may correct any error in the assessment or tax list, and may assess and list for taxation any omitted property."

And Section 7152 declares:

"If such correction or assessment is made after the books have passed into the hands of the treasurer he shall be charged or credited therefor as the case may be."

Thus it is seen, as before explained, that the auditor, generally speaking, can do two things, according to that section of the statute. On the other hand, the county treasurer does not have so much authority in the premises. Section 7155 of the 1927 Code authorizes this officer as follows:

"When property subject to taxation is *withheld, overlooked, or from any other cause is not listed and assessed,* the county treasurer shall, when apprised thereof, at any time within five years from the date at which such assessment should have been made, demand of the person, firm, corporation, or other party by whom the same should have been listed, or to whom it should have been assessed, or of the administrator thereof, the amount the property should have been taxed in each year the same was so *withheld or overlooked and not listed and assessed,* together with six per cent interest thereon from the time the taxes would have become due and payable had such property been listed and assessed." (The italics are ours.)

Obviously, then, the power and authority of the county treasurer under Section 7155 of the statute is not as broad as that of the county auditor under Sections 7149 and 7152. Therefore, it is important to determine here whether the change of the valuation and assessment in the case at bar was made by the county treasurer or by the county auditor. According to the record, there was no change whatever made by the county auditor on the assessment books. He did not even attempt to make a change himself. Rather than so doing, the county auditor wrote a letter asking the county treasurer to make the change. When that letter was written, the books, it is to be remembered, were in the possession of the county treasurer. Acting upon the written suggestion of the county auditor, the county treasurer did in fact change the valuation and assessment. About this there cannot be a serious controversy, for the evidence on the subject is clear and undisputed. It is plain that the auditor could not delegate his power and authority under the statute to the treasurer. See Thede v. Thornburg, 207 Iowa 639. If the treasurer, then, had the power to change the valuation and assessment, it was because the legislature conferred it upon him, and not due to the fact that the auditor transferred any of his power to the first-named official. In view of the fact that the

auditor did not change or correct the valuation and assessment, it is not necessary to determine whether that official had the power or authority to correct the alleged error of the assessor. Hence, we do not determine that question. This case, therefore, will not be a bar to the authority and power of the auditor, if he has such, to correct the alleged error in the assessment and valuation, if any exists.

So, it is essential now to decide whether the county treasurer had the power or authority to change the valuation and assessment under the circumstances. Such power and authority, if any existed, must be found in Section 7155 of the 1927 Code above quoted. There is but one matter upon which the county treasurer can act under Section 7155, and that is "omitted property." While three propositions are named in the section, upon final analysis the provision relates in fact to omitted property. When property is withheld from taxation it is omitted therefrom. Likewise, when property is overlooked for taxation purposes, it is omitted from taxation. Again, when property for any cause is not listed and assessed, it is omitted, generally speaking, from taxation. At least, for all practical purposes under the record in the case at bar that is true.

The assessor and appellee in the case at bar did not withhold property from taxation. As a matter of fact the property in question was valued and assessed at a substantial sum. Neither did the assessor nor the appellee overlook any property, for the real estate under consideration was properly recognized, accounted for, listed, valued, and assessed. Appellants as a matter of fact concede in their argument that the property was not omitted from assessment. Not having been omitted from valuation and assessment, the property under section 7155 of the 1927 Code was not withheld, overlooked, or from any other cause not listed and assessed. This valuation and assessment being for a substantial sum, therefore, it cannot be said that the property was omitted.

"Plainly enough by taxable property withheld is meant property held or kept from being entered on the assessment roll." Tally v. Brown, 146 Iowa 360 (local citation 374).

To the same effect see Woodbury County v. Talley, 153 Iowa 28.

In Smith v. McQuiston, 108 Iowa 363, cited by appellants, a clerical error occurred in copying the assessment roll. Consequently it is said that there never had been an assessment. That was true under the Smith case because the assessor's valuation did not become a part of the official records. Here, however, the assessor made a valuation and solemnly placed the same upon the assessment roll, gave a copy thereof, as required by law, to the appellee, and then appeared with his official action before the local board of review, where he and the board both reviewed the valuation and ratified and approved the same. As thus approved, that official valuation was considered by the county board of review, and then by the executive council. The executive council acted upon the official valuation of the assessor and increased the same four per cent. Then, as thus increased, the county auditor made up his books and turned the same over to the county treasurer in order that the taxes therein listed might be collected. Clearly, then, the Smith case (108 Iowa 363), above cited, does not apply to the case at bar. See Polk County v. Sherman, 99 Iowa 60. Repeatedly it has been said by this court that the treasurer has no power to correct error. His authority is limited to the assessment of omitted properties. Security Savings Bank v. Carroll, 128 Iowa 230; German Savings Bank v. Trowbridge, 124 Iowa 514; Gibson v. Clark, 131 Iowa 325; Brainard v. Harlan, 158 Iowa 436; Langhout v. First National Bank of Remsen, 191 Iowa 957; First National Bank v. Weber, 196 Iowa 1155; Ft. Madison Security Co. v. Maxwell, 202 Iowa 1346.

Quoted excerpts from some of the foregoing authorities will explain to the reader how this court has applied the principle in other cases. It is said in Security Savings Bank v. Carroll (128 Iowa 230), supra, reading on page 231:

"The statutes authorizing the treasurer to assess property 'withheld, overlooked or from any other cause not listed or assessed,' was not intended to confer on him appellate jurisdiction to correct the errors or mistakes of assessors or boards of review in estimating values of property actually assessed. If the particular thing has been listed and a value fixed by the proper officers, their action, in the absence of an appeal to the district court, is final."

This court used similar language in Brainard v. Harlan (158 Iowa 436), supra, reading on page 440:

"Under previous holdings of this court, the county treasurer is not authorized by section 1374 (of the 1897 Code, now 7155 of the 1927 Code) or any other section, to enter an assessment against property already assessed by the assessor and the board of equalization and returned to the county officials."

Again it was declared by this court in Langhout v. First National Bank (191 Iowa 957), supra, reading on pages 960 and 961:

"Therefore, unless the power conferred upon the county treasurer by the provisions of Code Section 1374 (of the 1897 Code; now section 7155 of the 1927 Code) is a warrant for his listing and assessing of the shares of stock of the defendant bank as omitted property, then such power does not exist. The purpose of this statute, and the sole purpose thereof, is to provide the means whereby property that has escaped the attention of the assessor, or has been withheld from his knowledge, and which may have escaped correction by the county auditor for the current year, may be added to the assessment roll and made to bear its proper and proportionate share of public taxation. * * * To give this statute any other construction would be to create and constitute the county treasurer a reviewing officer in assessments required to be made by the assessor, and clearly this is not the legislative intent."

Therefore, it is apparent that Section 7155 of the 1927 Code merely authorizes the county treasurer to assess, for taxation, property which has been "withheld, overlooked, or from any other cause not listed." When the property has not been omitted from the assessment roll, but placed thereon and a value fixed therefor, the treasurer cannot assess it under Section 7155 of the aforesaid Code. All the cases above cited clearly support this conclusion.

Wherefore the county treasurer had no jurisdiction or authority in the premises, and the district court properly sus-

960

tained the writ of certiorari. Its judgment, then, should be, and hereby is, affirmed.—Affirmed.

WAGNER, C. J., and EVANS, STEVENS, ALBERT, DE GRAFF, MORLING, and GRIMM, JJ., concur.